Folsom & Co. v. The Star Union Line Fast Freight Line.

1. **Pleading**: CORPORATION: DENIAL OF CORPORATE CAPACITY. Where a defendant sued as a corporation answered denying that it was a corporation, or had ever been organized or attempted to be organized as one, such denial was held sufficiently specific under section 2717 of the Code.

2. ——: ——: ESTOPPEL. A claim that a defendant sued as a corporation is estopped by its acts and course of dealing to deny its corporate capacity must be specially pleaded.

*Appeal from Boone District Court.*

WEDNESDAY, OCTOBER 6.

THE petition alleged "that the defendant is a private corporation duly organized, chartered and existing under and by virtue of the law of the State of Pennsylvania, for the purpose of carrying on the business of common carriers of goods and merchandise. That the defendant operates a fast freight line and transports goods and merchandise over the line of the C. & N. W. R'y Co., and operates the same through the county of Boone, Iowa, and has an office and agent at Boone for the purpose of receiving and shipment of goods and merchandise and transacting other business. That June 15th, 1878, plaintiff contracted with defendant to carry and transport, as common carrier, eighty-six barrels of packed eggs from Boone, with plaintiffs as consignors, to be delivered in the city of New York, to G. W. Martin & Bros., at defendant's usual rate of carriage, which has been paid by plaintiff. That said eggs were shipped in good order and carefully packed by plaintiff, and when received by defendant were marked 'O K,' said letters meaning that said eggs were in good order, well packed and in proper condition for carriage. That it was the duty of defendant, under its contract, to provide the car in which said eggs were shipped with sufficient ice to keep said eggs cool, and to carry and handle the same with care, and that said goods should be carried without

re-shipment from Boone to New York City without change of cars." The petition further alleges that the defendant so negligently conducted in failing to provide the cars with ice, and in handling the eggs, and in the transhipment of them from the car in which they left Boone, that 2,850 dozen of said eggs were broken, spoiled and destroyed. The plaintiff asked judgment for $370.50.

The defendant answered as follows: "For a plea to the jurisdiction of the court and in abatement, defendant denies that it is or ever has been a corporation, either public or private, and duly organized, chartered or existing under the laws of the State of Pennsylvania, or under the laws of any other state or government, for the purpose of carrying on the business of common carrier in goods and merchandise or otherwise; denies that it is a common carrier; denies that it has, or ever had, an office, or agent at Boone, or elsewhere in Boone county, Iowa, for the purpose of receiving or shipment of goods or merchandise, or the transaction of other business. It avers that it is not a corporation because it was never organized as such under the laws of any state or government, and never pretended to be a corporation and never was operated as such, and never has had any capacity to sue or be sued as a corporation; that it did not at any of the times mentioned in the petition transact business at Boone, Iowa, or have an office or agent or agency there for the transaction of business; that the matters complained of in the petition did not grow out of, and are not connected with, any office or agent, or agency of defendant at Boone; and that by means of the premises this court has no jurisdiction of the subject-matter of this suit, or of the defendant, and cannot proceed to the trial or disposition of this cause." In addition to this answer the defendant also denied each allegation of the petition. The cause was tried to the court and judgment was rendered for the plaintiff for $370 and costs. The defendant appeals.

*Hubbard & Clark*, for appellant.

*Holmes & Reynolds*, for appellee.

DAY, J.—The plaintiffs attached to their petition certain interrogatories to the defendant, accompanied with an affidavit that the defendant's answers thereto, if truly made, would sustain plaintiff's claim. The defendant objected to answering certain of the interrogatories, and the objection was sustained. The interrogatories to which the defendant responded, together with the answers thereto, are as follows:

"1. What is defendant's corporate name? Answer. Defendant is not a corporation, and has no corporate name.

"2. Under what state law is defendant incorporated, and of what state is it a resident as regards incorporation? Answer. Defendant is not incorporated under the laws of any state, is not a resident of any state, and is not incorporated.

"3. Where are the headquarters and general offices of defendant? Answer. A mere trade-mark. Has no headquarters.

"4. Do and did you in June, 1878, do business as common carriers and receive goods for shipment from Boone, Iowa, to New York City? Answer. No.

"8. Do you receipt for goods shipped over your line in the name of the railroad company over whose road you ship, and by their agents, or in your own name and by your own agents? Answer. All railroad companies whose roads run east from Chicago receipt to western roads for property delivered by western roads to eastern roads at Chicago. The road over which Star Line Cars run east of Chicago is no exception to the general rule.

"9. When receipts are given persons shipping over your line, do such receipts show on their face whose agent the persons signing them are? Answer. I think they do.

"10. Are the agents of your company at the way stations between the points where you operate generally the agents of the railway company over whose lines your cars are run? Answer. We have no agents at way stations on any line of railway.

"12. Does and did your company in June, 1878, solicit

and receive business at Boone, Iowa, to be transported to the City of New York? Answer. Defendant is not a company or carrier, and solicited no freight or merchandise in June, 1878, or at any other time, to be carried by it to New York City, or any other point.

"13. Did you on the 15th of June, 1878, make a contract with plaintiff for the transportation of eighty-six barrels of eggs from Boone to New York City? Answer. No.

"14. Is it a fact that the written and printed matter put forth by you to the public and the representations of your agents, prior to June 15th, 1878, on the faith of which in part you received goods for carriage, represent that there would be no transfer of goods from the cars in which they were originally shipped until they reached their destination? Answer. When a full car load of freight for eastern point reaches Chicago, in a Star Line Car from a western road, the same car is sent through to destination without transfer of freight at Chicago, provided the car is all right, and there is no good reason for transfer. If there is a good reason, freight is transferred, and *all* partial car loads are liable to be transferred to some car already containing a partial load. Full loads are made at Chicago, and sent to the eastern seaboard cities. Defendant receives no goods or merchandise for carriage.

"15. Do not your orders to your agents and agreements with your patrons provide as a rule that merchandise shipped in your cars shall not be transferred to any other car until it reaches its destination? Answer. From Chicago east to destination freight is not transferred, as a rule.

"16. Were the eighty-six barrels of eggs, shipped in one of your cars as aforesaid, transferred or taken out of said car from the time they left Boone until they reached New York City? If so, state when? Answer. The eggs in question reached Chicago in a car which came upon a track along-side Star Line Refrigerator Car No. 1778, and were transferred into said refrigerator car June 18, 1878.

"17. What was the number of the car in which said eggs were shipped from Boone? Answer. Don't know.

"18. What was the number of the car in which said eggs arrived in New York City? Answer. Refrigerator Car No. 1778.

"19. Wasn't a part of your contract with plaintiffs that you were to keep the car in which said eggs were shipped supplied with ice during all the period of its transit in sufficient quantity to prevent the eggs from becoming heated? Answer. Never made any contract to ship any eggs for plaintiffs, either with or without ice.

"20. Did your said line do business over the Iowa Division of the C. & N. W. R'y in June, 1878, and did you solicit or do business at Boone at and before said date? Answer. Defendant did not solicit or do business at Boone, Iowa, at and before June, 1878. When Star Line Cars are delivered to C. & N. W. R'y Co., at Chicago, that company sends the cars to various parts of the Northwest, and may have sent cars to points on the Iowa Division of the C. & N. W. R'y; do not know.

"21. If you say no, then state if your cars were run and operated over said line by the C. & N. W. R'y Co., and the terms and contract had and made by you with the C. & N. W. R'y Co. to run and operate its cars? Answer. Defendant has no cars.

"22. Was the contract made by you for the transportation on your part of the eggs in suit made with the plaintiffs or with the C. & N. W. R'y Co? Answer. No contract was made by defendant with plaintiffs for the transportation of any eggs. Don't know whether plaintiffs contracted with the C. & N. W. R'y Co. for the shipment of any eggs or not.

"23. Was said contract made in accordance with your usual custom in June, 1878, and just prior thereto, for the shipment of similar goods to New York? Answer. Defendant never made any contract with plaintiffs for the transportation of eggs.

"25. Did you deliver said eggs in New York in your own cars? Answer. The eggs were taken out of Refrigerator Car No. 1778 in New York, and delivered to consignees at the depot in usual way.

"26. Was O. T. Marshall, of Boone, Iowa, your agent for the purpose of receiving freight for shipment by your line June 15, 1878, and prior thereto? Answer. No.

"27. If not, who did act as your agent at Boone? Answer. Nobody.

"28. Is the name in which defendant is sued the precise name recognized by defendant, and in which it transacts business, or has it some other name, and if so, what? Answer. 'The Star Union Line' is the precise, sole and only name of the trade-mark, which is made defendant herein. That name and none other is used in the transaction of all business pertaining to such trade-mark.

"31. Who are the proprietors of defendant's Fast Freight Line? Give the full names of all such owners, and their place of residence, and state fully all you know about the ownership of defendant's Fast Freight Line? Answer. Defendant has no cars, and owns no fast freight or other freight line. The trouble in this case and in answering this question is that plaintiffs are seeking to make a trade-mark, or a distinctive business badge, defendant herein. 'The Star Union Line' is a mark or badge adopted for convenience to designate freight handled in certain cars and in a certain manner, somewhat distinct and different from other grades of freight; but it is no more an entity, organization or corporation in law or in fact than 'first class,' 'second class' or 'third class' freights are organizations, corporations or copartnerships. This question is, who is the proprietor of defendant's fast freight line? The defendant owns nothing, not even what is earned by freight carried and designated as 'The Star Union Line.' It has no freight line. It does not own or lease cars or railways. It is merely a name used to designate certain cars used in handling certain freights on fast

time and with certain precautions to prevent deterioration in transit, and to keep the receipts, accounts and disbursements pertaining to such freights distinct and separate from other freights and freight business. But the 'Star Union Line' no more has a fast freight line than Radway's Ready Relief has a patent medicine. If a suit should be brought against Radway's Ready Relief, and that supposed defendant should be asked who owned its medicines, everybody could understand that Radway's Ready Relief has and possesses no medicines to be owned by anybody. That is practically the situation in this case when the 'Star Union Line' is asked who are the proprietors of its fast freight line. It has no fast freight line to be owned by anybody.

"35. Has defendant any articles of copartnership or organization in which is stated the business of defendant, who are its officers or managers with such data or provisions as are incidental to the business of a company, copartnership or corporation, and if so, attach a copy of same to your answer. State if such articles of organization are open to public inspection, where they are, and under whose control. Answer. No. It has nothing of the kind. If certain cars on a railway from Council Bluffs to Chicago should be designated 'Through Freight Line,' and used in the transit of through freight only, that name being used for convenience in doing the business and keeping all accounts pertaining to such through freight, everybody would understand that this would not make such 'Through Freight Line' a separate organization, and that it would not be necessary, in order to handle through freight in this manner, to have articles of copartnership or organization. That is the case with the 'Star Union Line.' It has nothing of the sort.

"36. What is the name of defendant's organization, and when was it organized for business on the basis it did business under in June, 1878? Answer. The 'Star Union Line' is not an organization, but a name, badge or distinctive mark used in handling freights and keeping the accounts pertain-

ing thereto, just as would be the case with the supposed Through Freight Line mentioned above. This was the case in 1878, as well as now."

The defendant, it is to be observed, is sued as a private corporation duly organized, chartered and existing under the law of the State of Pennsylvania. The plaintiff introduces no proof whatever of the corporate capacity of the defendant. The defendant offered in evidence plaintiff's interrogatories and the answers thereto. The Code contains the following provisions: "Section 2716. A plaintiff suing as a corporation, partnership, executor, guardian, or in any other way implying corporate, partnership, representative, or other than individual capacity, need not state the facts constituting such capacity or relation, but may aver generally, or as a legal conclusion, such capacity or relation; and where a defendant is held in such capacity or relation in the same general way."

"Section 2717. If either of the allegations contemplated in the three preceding sections is controverted, it shall not be sufficient to do so in terms contradictory of the allegation, but the facts relied on shall be specifically stated."

The appellee insists that defendant's answer is simply a general denial, equivalent to the general issue at common law, 1. PLEADING: that it does not comply with the requirements of corporation: denial of corporate capacity. Section 2717, and that, therefore, defendant's incorporation was not in issue, and the plaintiff was not required to prove it. It is evident that a defendant sued as a corporation may rely upon various facts as a ground for denying its corporate capacity. There may be a defect in the organization; the corporation may have ceased to exist, by lapse of time limited by its charter or by statute; it may have been dissolved as provided by law. Under section 2717 of the Code, it is not sufficient for the defendant to say it is not a corporation. The fact upon which it relies for a denial of corporate existence must be stated specifically. It must aver the precise defect in its organization, or that it has ceased to exist as a corporation by limitation in its charter or the stat-

ute, or that it has been dissolved in a particular manner, or any other fact upon which the defendant relies.    In this case the defendant does not rely upon any defect in organization, nor that it has ceased to exist by lapse of time, nor that it has been in any way dissolved, but upon the fact that it never was organized, or attempted to be organized, as a corporation under the laws of any state or government.    This is a specific statement of the facts relied upon as provided in section 2717 of the Code.    The plaintiffs are fully advised of the particular fact which it is incumbent upon them to prove, to-wit: That defendant was organized as a corporation under the law of some state or government.    The answer of the defendant is essentially different from a mere denial that defendant is a corporation.    The court could not properly disregard the answer.    Not only was there no proof that the defendant was a corporation, but the answers of the defendant to the interrogatories propounded, and which under section 2693 may be read in evidence for the defendant, deny in the most positive and particular manner that the defendant is a corporation or even a co-partnership, and allege that it is merely a trade-mark or badge of business.    In such a state of the evidence it was error to render judgment against the defendant, unless the defendant is estopped to deny that it is a corporation.

II.    It is claimed by the appellees that the defendant, by its course of dealing, is estopped to deny that it is a corporation.    The answer to this position is that no such issue is raised by the pleadings, nor was such question presented in the court below.    Matter in estoppel must be specially pleaded.    *Ransom v. Stanberry*, 22 Iowa, 334; *Phillips v. Van Shaick*, 37 Iowa, 229.

2. ——: ——: estoppel.

This view of the case renders unnecessary a consideration of the other points presented by the appellant.

REVERSED.