ELGIN NAT. WATCH CO. v. LOVELAND et al.

(Circuit Court, N. D. Iowa, Cedar Rapids Division.   August 25, 1904.)

No. 29.

1. CORPORATIONS—LEGALITY OF INCORPORATION—ILLINOIS STATUTE.

Under Hurd's Rev. St. Ill. 1899, c. 32, § 4, which provides that the certificate of the Secretary of State to the organization of a corporation shall be recorded in the county where the principal office of the company is located, and that "upon the recording of the said copy the corporation shall be deemed fully organized and may proceed to business," as said provision has been construed by the Supreme Court of the state, the recording of said certificate is an essential and precedent condition to the legal existence of the corporation.

2. SAME—RIGHT TO ATTACK LEGALITY OF INCORPORATION.

Whether or not a corporation exists which may sue or be sued is always open to challenge by a proper plea in an action by or against it as such, or whenever such question becomes material in a suit, unless the party seeking to raise it is estopped.

3. SAME—DE FACTO CORPORATION—USER OF CORPORATE FRANCHISE.

The carrying on of business by individuals under a company name, when there is no such corporation in legal existence, and when the business is of such character that it may as well be conducted by individuals or a partnership as by a corporation, is not a user of the corporate franchise, such as to constitute a corporation de facto.

4. UNFAIR COMPETITION—SUIT TO ENJOIN—PARTIES.

A corporation is not an indispensable party to a suit for unfair competition against individuals, although defendants are charged with having fraudulently assumed the corporate name; since the authority of the corporation, if it was given, constitutes no defense.

5. SAME—USE OF GEOGRAPHICAL NAME—SECONDARY MEANING.

Complainant, the Elgin National Watch Company, a manufacturer of watch movements at Elgin, Ill., held, under the proofs, to have used the word "Elgin" in connection with its trade, products, and place of business for such length of time that the word has acquired a secondary meaning in the watch and jewelry trade as indicating not only the place of manufacture, but also its own product, and to entitle it to an injunction restraining defendants from using the word in connection with their business as wholesale dealers in watches and jewelry for the purpose and with the effect of palming off their goods as manufactures of complainant.

6. SAME—FRAUDULENT USE OF GEOGRAPHICAL NAME.

Defendants, who were wholesale dealers in jewelry and watches doing business in Iowa, adopted the name of "Elgin Jewelry Company," and used such name on their letter heads, stating their place of business as Elgin, Ill.   They conducted no business in Elgin, but merely rented a

¶ 4. Unfair competition, see notes to Scheuer v. Miller, 20 C. C. A. 165; Lare v. Harper & Bros., 30 C. C. A. 376.

¶ 5. Use of geographical names as trade-names, see notes to Hoyt v. J. T. Lovett Co., 17 C. C. A. 657; Illinois Watch Case Co. v. Elgin Nat. Watch Co., 35 C. C. A. 242.

small room there, which was placed in charge of a clerk, who received and attended to correspondence, forwarding certain of the letters received to defendants and mailing the answers, which were written in Iowa, and sent to Elgin for that purpose. It was shown that defendants' salesmen represented to customers that the company was connected with complainant, and that some customers were led to believe such to be the fact. There was other evidence showing that the purpose of defendants was to obtain the advantage of the high reputation which had been acquired in the trade by complainant as manufacturer of the "Elgin" watches. *Held*, that such use of the word "Elgin" by defendants in their trade-name was intended and calculated to deceive purchasers, and constituted unfair competition.

7. SAME—ENJOINING ORGANIZATION OF CORPORATION.

In a suit for unfair competition by the fraudulent use by defendants of the word "Elgin" in the trade-name assumed by them, a federal court has no power to enjoin defendants from completing the organization of a corporation under the same name which has been duly authorized by the proper authorities of another state, and which, by its articles of incorporation, is authorized to do other kinds of business which would not compete with or injure complainant.

In Equity.   Bill to restrain unfair competition in trade.   Submitted on demurrer to the bill and motion of complainant for preliminary injunction.

The bill was filed February 23, 1904, and therein it is alleged in substance:

"That complainant is a corporation duly incorporated in 1865 under the laws of the state of Illinois. That its name first was 'The National Watch Company,' which, in 1874, was changed to the 'Elgin National Watch Company'. That by its charter it is empowered to manufacture, purchase, and sell watches, clocks, jewelry, and parts and materials for the manufacture thereof. That its factory is located at Elgin, Kane county, Illinois, where for many years its business has been the manufacture of watch movements. That at first its business was small, but this has steadily increased until at the present time it is one of the largest of its kind in the world. That its product is sold all over the United States, and to a large extent abroad. That it has acquired a high reputation for accuracy and durability; and complainant enjoys a business good will, which, owing to the high reputation of its product, is of incalculable value. That notice that the complainant is the manufacturer of its product was given first by stamping its name on the plate and dials of all its manufactures, but since 1890 the custom and practice has been to stamp the name 'Elgin' upon the dials, while its full corporate name and the word 'Elgin' have always been placed upon the plates; with the result that the name 'Elgin' has become identified and associated with the complainant so that its products are not bought, ordered, or spoken of except as 'Elgin watches.' That the complainant has been spending about $75,000 a year for many years in advertising, and this has all been done as the advertisement of the 'Elgin watch' under that name. That its corporate name is seldom used, and not generally known, outside the trade. That, as a result, the name 'Elgin' in the jewelry trade in general has come to point distinctively to complainant, not only as applied to watches, but to time pieces of all descriptions as well as jewelry in general, and the name 'Elgin,' as applied to or in connection with watches, timepieces, and jewelry, is understood to mean and refer to complainant as the manufacturer, and to be a guaranty of excellence; and to the public indicates (1) the place of manufacture, (2) the business of complainant, (3) that the product on which or in connection with which the name is used is of complainant's manufacture, and (4) associates complainant's business with the general manufacture of jewelry. That prior to February, 1903, the defendants, Theodore O. Loveland, James L. Records, and Charles W. Harrison, were engaged in the business of jobbing and selling at wholesale jewelry, watches, watch movements, timepieces, silverware, and similar articles at Iowa City, in the state of Iowa, under the name of the 'Equitable Manufacturing Company,' and at about said time the said defendants conceived the fraudulent scheme

and plan of using and employing, and so began the use of, the name 'Elgin Jewelry Company,' for the purpose of exploiting and offering for sale and selling thereunder jewelry, watches, clocks, watch movements, and similar articles. That the word 'Elgin' in said name was selected by said defendants solely because of the high reputation and standing of complainant and its product, and because of the close association and identification of the word with complainant, and its use by the public to describe complainant and its product, and that the association of the name 'Elgin' therewith had become in the minds of buyers and the public extended from watch movements to watches, clocks, timepieces, and jewelry in general. That under such name the defendants have sold and continue to sell an inferior grade of watches, timepieces, and jewelry as the product and manufacture of the complainant, thereby deceiving buyers and defrauding complainant by the use of such name. That in March, 1903, said defendants attempted to form a corporation under the laws of the state of Illinois under the name of the 'Elgin Jewelry Company,' the objects of which corporation were to manufacture and sell watches, clocks, jewelry, and fancy goods of every description, and other articles, including cotton and woolen goods and wearing apparel. That the capital stock of said corporation was to be $25,000, and the location of its principal office was to be at Elgin, Kane county, Illinois. That the shares of stock of said corporation were to be five hundred in number, and of the par value of fifty dollars. That said Theodore O. Loveland and James L. Records each subscribed for 249 shares of said capital stock, the defendant Charles W. Harrison for one share, and one Frank E. Blackburn, of Chicago, Illinois, for one share. That the defendants Theodore O. Loveland, James L. Records, and Charles W. Harrison, were pretended to be elected as directors of said corporation, and the business office of the company was designated as 'Room 32, Young Men's Christian Association Building, Elgin, Kane County, Illinois.' That said corporation was never in fact completed. That its articles of incorporation and certificate of the Secretary of State of Illinois were never recorded in the office of the recorder of deeds of Kane county, Illinois, nor in any other county in said state. That said defendants are each and all residents of the city of Iowa City, in the state of Iowa, do not now transact, and never have transacted, any business in the city of Elgin, Illinois. That neither they nor the pretended corporation the 'Elgin Jewelry Company' have now, or ever have had, any factory, works, or business in the city of Elgin, Kane county, Illinois. That defendants have for some time maintained a sham place of business in said city of Elgin, located at Room 32, Young Men's Christian Association Building, which is a single small room in an office building in Elgin, but that no business of any kind is transacted there by said defendants or said pretended corporation, or at any place in the city of Elgin, except that mail addressed to the Elgin Jewelry Company at Elgin is there received by a young woman in charge of said room 32, and forwarded to defendants at Iowa City, or as directed by defendants from Iowa City. That as a matter of fact all business obtained by defendants under the name 'Elgin Jewelry Company' is transacted and attended to at Iowa City, Iowa, or Chicago, Illinois; and that the assumption of the name 'Elgin Jewelry Company' and the establishment and maintenance of defendants' office at Elgin, Illinois, is a mere sham for the purpose of asserting some colorable right to the use of the name 'Elgin' in said corporate style, and in this way to deceive the public, and profit and trade upon the complainant's business and reputation."

An injunction, preliminary and perpetual, is asked against the defendants, restraining them from using or employing the word "Elgin" or any like word in the manufacture, exploitation, or sale of watches, timepieces generally, or jewelry, or in any way, unless upon and in connection with the genuine product and manufacture of complainant, and from using the name "Elgin Jewelry Company," or any name in which the word "Elgin" is a part, as a business name or style; also from recording or attempting to record in the state of Illinois said certificate of incorporation, or completing the alleged incorporation of said Elgin Jewelry Company under the name or style of "Elgin Jewelry Company."

The complainant notified the defendants of an application for a preliminary injunction, and defendants have filed a demurrer to the bill on the grounds:

(1) Want of equity; (2) that complainant has a complete and adequate remedy at law; (3) that there is a defect of parties to the suit, in that the Elgin Jewelry Company is an indispensable party thereto, and is a corporation of the same state as complainant, and the court is without jurisdiction of said Elgin Jewelry Company; (4) that defendants have no interest in the subject-matter of the suit, the said Elgin Jewelry Company being alone interested therein.

Frank F. Reed, Edward S. Rogers, and Cooper, Clemans & Lamb, for complainant.

Charles A. Clark & Son, William G. Clark, and Dutcher & Davis, for defendants.

REED, District Judge (after stating the facts). **1.** The only ground of the demurrer that need be considered is that the Elgin Jewelry Company is an indispensable party to the suit—in fact, is the real party in interest; that it is a corporation of the same state of the complainant; and the court is without, and cannot acquire, jurisdiction of the controversy. If that company is in fact a corporation, and an indispensable party to the suit, it may be conceded that this ground of the demurrer is well taken. The articles of incorporation of that company and the certificate of the Secretary of State for the state of Illinois were never filed or recorded in the office of the recorder of deeds of Kane county, Ill., nor in any other county in that state. Is the Elgin Jewelry Company, then, a corporation? The incorporation act of Illinois provides:

"The Secretary of State shall thereupon issue a certificate of the complete organization of the corporation, duly authenticated under his hand and seal of state, and the same shall be recorded in a book for that purpose, in the office of the recorder of deeds of the county where the principal office of such company is located. Upon the recording of the said copy, the corporation shall be deemed fully organized and may proceed to business." Hurd's Rev. St. Ill. 1899, c. 32, § 4.

The Supreme Court of Illinois has several times held that the recording of the articles of incorporation and the certificate of the Secretary of State, as required by this section, is essential and a condition precedent to the legal existence of the corporation.

In Gent v. M. & M. Ins. Co., 107 Ill. 652, it is said:

"That a corporation should have a full and complete organization and existence as an entity before it can enter into any kind of contract or transact any business would seem to be self-evident. * * * A corporation, until organized, has no being, franchises, or faculties. * * * Until organized as authorized by the charter, there is no corporation; nor does it possess franchises or faculties for it or others to exercise until it acquires complete existence."

To the same effect are Stowe v. Flagg, 72 Ill. 397; Lovering v. McLaughlin, 161 Ill. 417, 44 N. E. 99; Edwards v. Armour Co., 190 Ill. 467, 60 N. E. 807.

These authorities are conclusive that under the laws of Illinois the filing for record of the certificate and articles of incorporation in the proper county is essential and prerequisite to the existence of a corporation and the transaction of any business by it as such. And such seems to be the general rule. Fredenburg v. Lyon Lake Church, 37 Mich. 476; Doyle v. Mizner, 42 Mich. 332, 3 N. W. 968; Capps v.

Hastings Prosp. Co., 40 Neb. 470, 58 N. W. 956, 24 L. R. A. 259, 42 Am. St. Rep. 677; Mokelumne Mining Co., v. Woodbury, 14 Cal. 424, 73 Am. Dec. 658. Abbott v. Omaha Co., 4 Neb. 416; Guckert v. Hacke, 159 Pa. 303, 28 Atl. 249.

It is urged that this is an attack upon the corporate existence of the Elgin Jewelry Company, which cannot be done collaterally, and can only be done by a direct proceeding by the state to oust it of its corporate rights. Whether or not a corporation exists, which may sue or be sued, is always open to challenge by a proper plea in an action by or against it as such. Railway Co. v. Fifth Baptist Church, 137 U. S. 568, 11 Sup. Ct. 185, 34 L. Ed. 784. And such a plea is not regarded as a collateral attack, but one which challenges the very existence of the corporation and its right to sue or be sued. Folsom v. Star Union Co., 54 Iowa, 490, 6 N. W. 702; Fredenburg v. Lyon Lake Church, 37 Mich. 476; Capps v. Hastings Prosp. Co., 40 Neb. 470, 58 N. W. 956, 24 L. R. A. 259, 42 Am. St. Rep. 677; Abbott v. Omaha Smelting Co., 4 Neb. 416; Mokelumne Mining Co. v. Woodbury, 14 Cal. 424, 73 Am. Dec. 658; Oregon Ry. Co. v. Oregon Nav. Co. (C. C.) 22 Fed. 245; Id., 23 Fed. 232; Doboy Tel. Co. v. De-Magathias (C. C.) 25 Fed. 697. The averments of the bill show no facts that would estop the complainant from challenging the corporate existence of the Elgin Jewelry Company, but do show that matters which are essential and prerequisite under the laws of Illinois to its existence as a corporation have not been complied with, and that it cannot, therefore, be sued as a corporation. There is a plain distinction between acts which are essential steps in the process of incorporation and prerequisite to corporate existence and those which are not, or which are such as may work a forfeiture of corporate rights after the corporation has been brought into legal existence. The performance of the first named acts may be challenged by private parties (when they are not estopped from doing so) whenever the question of corporate existence becomes material to them. The latter named can only be taken advantage of by the government in a direct proceeding to forfeit the charter. Mokelumne Mining Co. v. Woodbury, 14 Cal. 424, 73 Am. Dec. 658; Guckert v. Hacke, 159 Pa. 303, 28 Atl. 249; Ryland v. Hollinger, 117 Fed. 216, 54 C. C. A. 248; Abbott v. Omaha Smelting Co., 4 Neb. 416; Capps v. Hastings Prosp. Co., 40 Neb. 476, 58 N. W. 956, 24 L. R. A. 259, 42 Am. St. Rep. 677.

It is also urged that the Elgin Jewelry Company is a corporation de facto. It is essential to the existence of such a corporation that there be a user of such corporate rights as could be authorized by law, and not merely such as might be exercised by individuals or unincorporated societies. If such alleged user, therefore, consists only of acts or proceedings that might be exercised without corporation, a corporation de facto will not usually be inferred therefrom. Fredenburg v. Lyon Lake Church, 37 Mich. 476; Abbott v. Omaha Smelting Co., 4 Neb. 416; Capps v. Hastings Prosp. Co., 40 Neb. 470, 58 N. W. 956, 24 L. R. A. 259, 42 Am. St. Rep. 677; Greene v. Dennis, 6 Conn. 302, 16 Am. Dec. 58; Guckert v. Hacke, 159 Pa. 303, 28 Atl. 249. Under the allegations of the bill the name "Elgin

Jewelry Company" was so used by defendants under which to conduct their business before any attempt at incorporation, and the use of such name is entirely consistent with individual or copartnership capacity. But conceding, without deciding, that the Elgin Jewelry Company is shown to be a corporation de facto, is it an indispensable party to this suit? The suit is one to restrain the wrongful invasion of complainant's alleged rights. The defendants are charged individually with having, under a name fraudulently assumed, wrongfully invaded such rights. There is no allegation that the corporation, if one exists, has done this, or authorized it to be done, and no relief is asked against the corporation. Can the defendants escape liability upon the ground that the corporation is the real party in interest, or that they are acting only as its officers or agents in its behalf? In Belknap v. Schild, 161 U. S. 10, 16 Sup. Ct. 443, 40 L. Ed. 599, an action was brought against officers of the United States for the commission of a wrong done by them under the alleged authority of the United States. Mr. Justice Gray, speaking for the Supreme Court, said:

"The exemption of the United States from judicial process does not protect their officers and agents, civil or military, in time of peace, from being personally liable to an action of tort by a private person, whose rights or property they have wrongfully invaded or injured, even by authority of the United States. Such officers or agents, though acting under order of the United States, are therefore personally liable to be sued for any infringement of a patent."

See, also, Bates v. Clark, 95 U. S. 204, 24 L. Ed. 471.

The Elgin Jewelry Company, if a corporation, would have no rightful authority to trespass upon or invade complainant's rights, and, if it should direct its officers, agents, or employés to do so, such direction would no more protect such officers or employés from the consequences of such invasion than does the authority of the state or government protect its officers and agents from the consequences of wrongs committed by them as officers or agents of the government, for the authority of such corporation could not be greater than that of the state or sovereignty which created it. But in this case the defendants are not sued as officers or agents of a corporation. They are sued in their individual capacity only, for acts committed by them as individuals under an assumed name, in fraud of complainant's rights, and to prevent them from continuing such wrongful acts. To such a suit the Elgin Jewelry Company, if a corporation either de facto or de jure, is not an indispensable party. The demurrer will be overruled, and the defendants may answer by the October rule day, if they so elect.

2. Is complainant entitled to a preliminary injunction? The fraudulent practices of defendants, as alleged in the bill, are stated in substance above. That the exclusive use of a merely geographical name, or one descriptive only of an article of commerce, cannot be acquired, is clear. But when such a name has been so used in connection with a certain line of business as to indicate not only the place of manufacture or production, but the name of the manufacturer or producer, and the excellence of the thing made or produced, then it may have ac-

quired such secondary signification or meaning as will enable the one who has so used the same to assert an exclusive right thereto as against any one not doing business in the same geographical limits; and even as against those who are, if they fraudulently use the name for the purpose of misleading buyers, as to the actual origin or quality of the thing produced or sold, or to palm off the goods of one person as those of another. French Republic v. Saratoga Vichy Co., 191 U. S. 427, 24 Sup. Ct. 145, 48 L. Ed. 247, and cases cited. In Shaver v. Heller & Merz Co., 108 Fed. 821, 48 C. C. A. 48, the authorities (including those cited in behalf of defendants in this case) are very carefully and fully reviewed by the circuit court of appeals for this circuit, and the principles deducible therefrom stated by Sanborn, circuit judge, substantially as follows: (1) The sale of the goods of one manufacturer or vendor as those of another is unfair competition, and constitutes a fraud which a court of equity may lawfully prevent by injunction. (2) Geographical terms and words descriptive of the character, quality, or places of manufacture or of sale of articles cannot be monopolized as trade-marks. (3) But the use of such geographical or descriptive terms to palm off the goods of one manufacturer or vendor as those of another, and to carry on unfair competition, may be lawfully enjoined by a court of equity to the same extent as those of any other terms or symbols. (4) A proprietary interest in terms or symbols used to palm off the goods of one manufacturer or vendor as those of another, or to commit any other fraud, is not essential to the maintenance of a suit, to enjoin perpetration of the wrong, but an interest in the good will of a business or in the property threatened is sufficient. Since these decisions, it only remains to determine whether or not the complainant's use of the word "Elgin" in connection with its trade, product, and place of business has been such that it has acquired this secondary meaning; and the defendants have made such fraudulent use thereof as will entitle the complainant to prevent their further use of the same. That the complainant has made such continuous and uninterrupted use of the word "Elgin" for at least 30 years as a part of its trade-name, and to indicate the place, character, quality, and product of its manufacture, and for the general advertising thereof, as that the word has acquired this secondary meaning in connection with its trade and product does not admit of doubt. It also appears that prior to December, 1902, W. F. Main and M. F. Price, as partners, were conducting a jobbing and wholesale jewelry business, including the sale of watches and timepieces generally, at Iowa City, Iowa, under the name of the "Equitable Manufacturing Company." The defendants Loveland and Records were employés of Main and Price at Iowa City, where they then and ever since have lived. In that month said defendants purchased from Main & Price the business of the Equitable Manufacturing Company, and soon thereafter associated the defendant Harrison with themselves in the conduct of such business. In the latter part of January, 1903, the defendants began the use of the word "Elgin" as a part of their trade-name under which they did business, and in connection with the word "Ill." to indicate the place of such business and of the manufacture of the products or goods in

which they dealt. Their purpose in so adopting and using such words is best shown by two letters written by them in February and March, 1903, which letters are as follows:

Elgin Jewelry Company.

Not Incorporated.

Manufacturing and Wholesale Jewelers.

W. G. Bale,                                 Elgin Ill. 2/17/03 190
    Webster City, Iowa.

Dear Sir: One of our salesmen advises us that you are an up-to-date hustler, and that you might possibly be in the market for a good firm especially one located outside of the limits of the state of Iowa. This salesman makes this suggestion owing to the fact that he has heretofore operated for an Iowa concern, and that the reputation that that state bears in the assortment business is by no means an enviable one. He claims that while last year he placed nearly $30,000 worth of goods for the Iowa concern, that this year he will run nearly $50,000.00 because he is representing the Elgin a town with the finest reputation of any in the U. S. on account of the fact that the Elgin watch is manufactured here. It is well advertised in every hamlet from one end of the country to another. You find no dead wood lying around as a result of the ravage of any scheme from Elgin.

If you are open we would be pleased to hear from you.

    Yours truly,                            Elgin Jewelry Co.
  Y. H. R. M.                                 By H. R. M.

Elgin Jewelry Company.

Not Incorporated.

Manufacturing and Wholesale Jewelers.

W. G. Bale,                                 Elgin Ill. 3—4—1903
    Webster City, Iowa.

Dear Sir: We are in receipt of your favor of the 1st. We are sorry to note from contents of same that you are tied up until fall as we were in hopes that we would be able to make arrangements with you earlier in the season. We suppose the difficulty is that you are in one of those contracts that give you a bonus for so much business. Our contract is virtually the same thing so far as the premium is concerned. We give a $2,000 premium for $24,000 worth of settled business in one year. But if you could make arrangements to break away and come with us now we would be willing to equalize the premium, or in other words suppose you had placed $8,000 with your present firm, if during balance of your contract period with them you place a sufficient amount with us to entitle you to the premium under their contract we would pay it.

Of course you can readily see the advantages that Elgin would give you. We have already secured some of the finest salesmen in the U. S., and who had represented some of the oldest houses in this line, but they recognize the advantages to be derived from our location and think they have turned a good point by making the change. We think this would be your experience also.

You know that all firms are keen in their endeavors to secure as much information concerning other people as possible, for this reason all requests for information concerning methods, etc., are turned down by us. When we make arrangements with a man we either go to him in the field or have him call on us. We take no chances on giving a good thing away to somebody else. We hope that you will appreciate our position in this matter and know that it is the reason we do not furnish you the information you desire.

Over $5,500 worth of business so far this week and we don't have to inflate our sales reports to show it.

Will be pleased to hear from you and would like very much to make arrangements to meet you either on the road or at our office with a view to closing a deal for your services.

    Yours truly,                            Equitable Mfg. Co.
  Y-H. R. M.                                 Per H. R. M.

About the time or soon after the date of these letters the complainant began to receive letters from persons and firms in different parts of the country saying, in substance, that a traveling salesman had called upon them, claiming to represent complainant, and offering to sell a quantity of jewelry. In some cases the letters stated that the salesman stated that the Elgin Jewelry Company and the Elgin National Watch Company were one and the same, or different branches of the same company. Many of these letters appear in the proofs, and conclusively show that the writers of them were deceived by salesmen of the Elgin Jewelry Company into purchasing jewelry from that company, which they were led to believe was in fact the product of the Elgin National Watch Company, or a branch thereof. A number of persons also make affidavit that salesmen personally visited them, and made substantially the same representations. Neither of the defendants ever lived in Elgin, Ill., but in the latter part of January, 1903, one of them visited that city, rented a room in an office building, and installed therein a young woman named Martha Willson, and gave her instructions as to the manner in which she was to conduct the business intrusted to her. The affidavit of Miss Willson is substantially as follows:

"That early in February, 1903, I was employed by James L. Records to take charge of the office of the Elgin Jewelry Company, at Elgin, Illinois, which was then about to be opened, and from that time until the latter part of July, 1903, I was in the employ of the Elgin Jewelry Company. Its office has always been located at Room 32, Young Men's Christian Association Building, at Elgin: the room being a small one, about 12 or 14 feet in size, in an office building. None of the officers of the Elgin Jewelry Company lived in Elgin, and during the time I was in the employ of that company I was the only person in Elgin who had anything to do with its affairs, and I alone had charge of its office and business. No stock of any kind was kept there, and it had no stock or factory there. I was the only employé. My duties consisted in opening mail, and addressing and mailing circulars and letters. Mr. Loveland at the outset furnished me two or three forms of letters, with instructions as to how they should be used. One of them was intended to be sent to persons who wrote or telegraphed countermanding orders The letter head was:

" 'Elgin Jewelry Company.

" 'Not Incorporated.

" 'Manufacturing and Wholesale Jewelers.

" 'Elgin Ill.'

—and in substance the letter was as follows: 'We are very sorry that this request reached us too late to prevent shipment. As the goods have been delivered in compliance with the written conditions of your contract with us, we will be obliged to ask that you carry out these conditions. The jewelry having gone forward by express, it is, no doubt, some distance on the road by this time. * * *.' The name of the person to whom the letter was to be sent was filled in by me. Afterwards the letter head was changed, the words 'Not incorporated' omitted, and it was as follows:

" 'T. O. Loveland, Prest.          J. L. Records, Secy. & Treas.

" 'Elgin Jewelry Company.

" 'Manufacturing and Wholesale Jewelers.

" 'Elgin, Ills.'

"Upon stationery with this letter head letters were written by me from my form and sent to people according to my instructions, who wrote or telegraphed to hold shipment or to cancel orders. As goods were always shipped direct

from Iowa City, I, of course, had no way of knowing whether they had been actually shipped or not. Orders from salesmen were never sent to Elgin. * * * Where a letter or communication was not for the purpose of countermanding an order, it was not answered by me, but simply opened, and placed in large envelopes with the printed address, 'Equitable Manufacturing Company, Iowa City, Iowa,' and mailed. These envelopes were furnished to me for this purpose. Answers to such letters were written by some one with that company in Iowa City on the stationery of the Elgin Jewelry Company, with the word 'Elgin' on the date line. These letters were each in its own envelope, sealed, addressed, and stamped, and a bundle of them inclosed in large envelopes addressed to me at Elgin; and on receipt of them they were mailed by me at Elgin. Nearly all the letters which I received were from general store keepers in small towns. Very few, if any, were from cities of any size. A great many letters were received from people who seemed to be under the impression that they were addressing the Elgin Watch Company, and that the salesmen of the Elgin Jewelry Company who had called upon them were representing the Watch Company. * * * I remember several where the writers stated that the salesman of the Elgin Jewelry Company had said that the Elgin Jewelry Company had bought out the Elgin National Watch Company and the Waltham Watch Company. The writers of many of the letters refused to take the goods upon the grounds that they had been deceived. These letters I sent, with others, to the Equitable Manufacturing Company, at Iowa City, as I have stated; and the answers were written there on stationery of the 'Manufacturers' Collecting and Reporting Association of Elgin, Illinois.' These letters were sent to me along with the others, and mailed by me at Elgin. They were sent sealed, stamped, and addressed, and I simply mailed them at Elgin. All letters addressed to the Elgin Jewelry Company, the Manufacturers' Collecting and Reporting Association, or M. Wilson were put in the same box at the post office, where I got them. The actual business of the Elgin Jewelry Company was done at Iowa City, Iowa, and not at Elgin. My duties were entirely clerical, and consisted only in what I have set out in this affidavit. I was succeeded by a young woman who is now in charge of said room No. 32, apparently as I was."

Letters of the Manufacturers' Collecting & Reporting Association in evidence are signed "M. Willson," and some purport to show that M. Willson is the manager. The letter heads are as follows:

"Manufacturers'
"Collecting and Reporting Association.
"(Not Incorporated.)
"Organized for the special protection of the Wholesale, Manufacturing and Retail Trade. ———. We want your Business.
"Elgin, Ills."

On the margin of some of these letter heads is the following:

"Address all Communications relative to this correspondence to M. Willson, Manager, Elgin, Ills."

None of the foregoing letters nor the affidavit of Miss Willson are disputed or denied by the defendants, but they are in fact practically admitted by them. Upon some of the letter heads used by the defendants is the figure of a watch with the name "Elgin" upon the dial, substantially like such figures in much of the complainant's advertising matter. Discussion cannot make plainer, nor obscure, the purpose of the defendants in adopting the use of the word "Elgin" as a part of their name and business style; in establishing a mail station at Elgin, Ill., as stated by Miss Willson; and the whole conduct of their business, to prey upon the good will of the complainant, and to exploit, sell, offer for sale, and palm off their own jewelry as the

product of the complainant's manufacture, and to deceive buyers to so believe and to purchase the same as such. Defendants in no way attempt to dispute the main facts shown by the complainant. They deny any fraudulent intent in the use of the word "Elgin," and say that their attempt to incorporate in Illinois was in good faith; that they intend to locate at Elgin as soon as they can make the necessary arrangements to move their property there; that the failure to file the articles of incorporation with the recorder of deeds of Kane county, Ill., was an oversight; that they have discontinued the use of the figure of the watch upon their stationery, and added to their printed matter the words, "Not connected with the Elgin National Watch Company." These changes were made since the commencement of this suit, and they claim the right to continue the use of the word "Elgin" as a part of their trade-name, as they have been using it. They further say that March 24, 1903, in August, 1903, and again January 7, 1904, they instructed their salesmen not to represent that the Elgin Jewelry Company was in any way connected with the complainant, or that their product was the product of the complainant. This is but an added reason why the defendants should abandon the use of the word "Elgin" as it is used by them, for by such use they place it in the power of these salesmen to continue to deceive and confuse buyers and defraud the complainant. Defendants were advised that this was being done prior to the date of the former of these letters, which was less than two months after they began the use of the word, and less than one month after the attempt at incorporation. The letters received by complainant since these instructions were given show that some of the salesmen continue their practices in this respect, notwithstanding these instructions. Defendants say their salesmen operate in every state of the Union. The probable and possible extent of such practices and their effect on complainant is therefore readily apparent.

It is urged that the business of the defendants as conducted by them is not in competition with that of the complainant; that complainant manufactures watch movements only; that defendants do not manufacture watch movements, but confine their business to sales of watches upon mail orders only, and assortments of jewelry, silverware, and other goods of a cheap class, in which complainant does not deal, and therefore no injury results or can result to it. It is true that complainant could not complain of the use of the word "Elgin" by a manufacturer or vendor of some product not of the same general kind as the complainant's. Such a business would not be in competition with it. If a watch or watch movement, however, is not included in the general term "jewelry," it is so closely associated therewith that the public in general regard the dealing therein as a part of the jewelry business, and they are generally handled by jewelers, and in fact are a branch of the jewelry trade. This is clearly shown by complainant's proofs, and it is plain therefrom that the continued use of the word "Elgin" by the defendants, as used by them, is liable to and will confuse and deceive buyers quite generally, and lead many to believe that the jewelry sold and offered for sale by defendants is that of complainant's manufacture; and that de-

fendants are using this word as a part of their trade-name to palm off upon the public their own jewelry as the product and manufacture of complainant, and that this will cease only when such use of said word ceases.

It is asked in the prayer that the defendants be restrained from completing the organization of the Elgin Jewelry Company in the state of Illinois. The incorporation of a company of that name has been authorized by the proper authorities in Illinois under the laws of that state, and the filing of the certificate thereof and of its articles of incorporation in the proper county appears to be the only thing lacking to complete that organization. This, of itself, is not unlawful. To prevent such completion would necessarily affect the proposed corporation so authorized. While it is true the defendants hold practically all of the stock of such corporation, and control its affairs, it would be a legal entity, distinct and separate from its corporators and stockholders. The word "Elgin" is a geographical name, and its use as such alone could not be prohibited. It is only the fraudulent use of the word by the defendants that can be restrained in this suit. Besides, the proposed corporation is authorized to manufacture and sell many kinds of merchandise other than watches, watch movements, timepieces, silverware, and jewelry in general. To such extent the business of such proposed corporation would not be in competition with that of complainant, and should not be restrained at its suit. In any event, it is doubtful if complainant is entitled to a decree in this suit restraining the completion of the proposed corporation in the state of Illinois, which the proper authorities of that state have authorized, and which proposed corporation is not a party to this suit, and cannot be made such without ousting the jurisdiction of the court. This is sufficient to withhold the preliminary injunction against such completion.

The conclusion therefore is that the proofs show prima facie that a preliminary injunction should issue against the defendants as prayed for, in so far as their jewelry and watch trade is concerned, but not as to the completion of the corporation in Illinois. Upon the giving of a bond by the complainant in the penal sum of $10,000, with sureties to be approved by the clerk of this court, a preliminary writ of injunction may issue to the extent indicated.

It is ordered accordingly.