EDWARD DOYLE v. THOMAS W. MIZNER, WILLIAM GRAY AND EDWARD E. KANE.

*Estoppel by recognition of corporate character—Acknowledgment of articles of association—Certified copies in evidence—Chattel mortgage by grantees of property conditionally transferred and not held in good faith.*

The rule that one who recognizes an association as a corporation by dealing with it as such, is estopped from disputing its incorporation, originates in equitable principles and rests on the ground that the act of recognition creates relations and encourages conduct which there may be difficulty in undoing.   But it does not apply where no new rights have intervened and the recognition has itself been brought about by fraudulent dealing carried on for the purpose of entrapping a party into the act from which the recognition is inferred.

All private corporations must be organized under general laws and can be valid only when strictly conforming to all the conditions imposed on their completion.

Articles of association of a private corporation are invalid if not acknowledged, and are not entitled to be filed in the Secretary of State's office.

The certificate of the Secretary of State to a legal conclusion is of no validity as evidence.   His duty in certifying to copies of instruments on file in his office is purely ministerial, and he must certify to a copy of the entire document.   A mere certificate that a paper required to be acknowledged, is accompanied by an acknowledgment in the usual form, is of no effect.

A bill of sale is invalid unless delivered ;   and where the same persons are grantors and represent the grantees, there must be distinct evidence that the bill was meant to be operative, and the signature is not enough to show this.   Under such a transfer no new rights can arise as between the parties, on which to found an estoppel.

A resolution passed by two directors of a corporation in the absence of a third not sufficiently notified, will not authorize the execution of a mortgage whereby the latter's property is taken from his possession.

Where the only authority for mortgaging corporate property was a resolution passed by a majority of the directors, providing for a general mortgage, and that actually given was not general but was given to secure a particular debt, it could not be sustained in the hands of the original holder, and without any extension

of time or other circumstance making out a case of a mortgage in good faith entitled to protection.

D joined in articles of association with M and G, and gave them a bill of sale of certain property, which was not to take effect until the issue of stock by the new corporation.    The legal preliminaries to incorporation were not completed, but M and G, who were a majority of the directors, D being the other, mortgaged the property in his absence, and K, the holder of the mortgage, took possession of it.    D brought trover against them. *Held* (1) that there was no incorporation ;   (2) that as between the parties to the transfer there was no estoppel by dealing in a corporate character with one another, as they were bound to know that there was no legal incorporation, and if they did not, a mistake of law on that point would exonerate one party as well as the other ;   (3) that in testifying as to how he came to take the mortgage, K could not repeat the statements made to him by his co-defendants, as to their previous dealings with D, as they were hearsay and not needed to describe the *res gestæ;* (4) that the admission of testimony of a sale under the mortgage, if erroneous, was cured by an instruction that the measure of damages, if any, would be the value of what was taken with interest from the time of taking it, less the actual amount of the mortgage.

Error to the Superior Court of Detroit.    Submitted October 30.    Decided November 29.

TROVER.    Plaintiff brings error.

*Moore & Moore* for plaintiff in error.

*Ed. E. Kane* and *Frank H. Canfield* for defendants in error, Gray and Kane.    The taking of converted property by a third party after its conversion, and its application by him to the payment of the owner's legal indebtedness may be shown in mitigation of damages in an action against the tort-feasor, *Irish v. Cloyes,* 8 Vt., 32 ; *Stewart v. Martin,* 16 Vt., 402 ;   *Stow v. Yarwood,* 14 Ill., 426 ; *Higgins v. Whitney,* 24 Wend., 379 ;   *Ball v. Liney,* 48 N. Y., 14 ;   *Sherry v. Schuyler,* 2 Hill, 204 ;   *Curtis v. Ward,* 20 Conn., 208 ;   *Pierce v. Benjamin,* 14 Pick., 360 ;   *Kaley v. Shed,* 10 Met., 319 ;   *Squire v. Hollenbeck,* 9 Pick., 552 ; *Howard v. Cooper,* 45 N. H., 342 ;   *Smith v. Mitchell,* 12

Mich., 191; *Northrup v. McGill*, 27 Mich., 238; Sedgwick on Damages, 428, *n.* 2; damages in trover are the value of the property with interest from the date of conversion, *Ripley v. Davis*, 15 Mich., 80; *Bates v. Stansell*, 19 Mich., 91; in trover defendant may show an outstanding title superior to the plaintiff's, even though he does not connect himself with it, *Rotam v. Fletcher*, 15 Johns., 208; *Schermerhorn v. Van Volkenburgh*, 11 Johns., 529; *Kennedy v. Strong*, 14 Johns., 131; *Aikin v. Buck*, 1 Wend., 469; *Bush v. Lyon*, 9 Cow., 52; *Suroot v. Cook*, 4 W. T., 112; *Glenn v. Garrison*, 17 N. J. L., 4; *White v. Dinkins*, 19 Ga., 286; *Sylvester v. Girard*, 4 Rawle, 185; *Grubb v. Guilford*, 4 Watts, 223; those who seek to incorporate a company, and notwithstanding a defect in the proceeding afterward treat it as regularly incorporated, are estopped from denying the incorporation, *Swartwout v. Mich. A. L. R. R.*, 24 Mich., 389; *Monroe v. Ft. W., J. & S. R. R.*, 28 Mich., 275; *Whipple v. Parker*, 29 Mich., 379; *Merch. & Mfrs. Bank v. Stone*, 38 Mich., 779.

CAMPBELL, C. J.   Doyle brought suit to recover for the forcible removal and disposal of certain goods claimed to be his property, and taken from his possession by defendant Kane under color of a chattel mortgage purporting to be made by Mizner and Gray, as president and secretary of the Detroit Chemical Works.   This mortgage bore date April 10, 1875, and purported to cover the entire property and credits of the company, which were quite valuable, if owned at all, and all future acquisitions, to secure $312.23, payable on demand to Kane as trustee, to pay certain debts therein named, and authorized him to take possession whenever he should deem himself insecure.   He took possession at once against Doyle's protest.

The case was before us at the January term, when we reversed a judgment which had been rendered against Doyle under instructions which took the case from the

jury. We did not therefore consider all the points raised further than to hold that Kane was not on any better footing than his co-defendants, and that Doyle's case, if true, made out a gross fraud. 40 Mich., 160. On a new trial the whole facts were again discussed and a judgment rendered for defendants, of which Doyle again complains. The case as now presented—in addition to various questions and rulings brought up for review—presents a controversy growing out of these circumstances.

In 1874 Doyle, using the name of the Detroit Manufacturing Company, was owner of a considerable business consisting chiefly of manufacturing perfumery and extracts usually sold by grocers. On the 17th of September, 1874, he gave a chattel mortgage to William Frank & Sons for $293.86, payable in three months, which afterwards became the property of Henry Boulter, and was held by him in April, 1875. January 27th, 1875, an agreement was signed by Doyle, Mizner and Gray, to organize a joint stock company to be known as the Detroit Chemical Works with a capital of $50,000, in 2000 shares of $25 each. The paid-in capital was fixed at $14,000; the estimated assets of the Detroit Manufacturing Co., of which $10,000 as paid-up stock was to go to Doyle, and $2000 each to Gray and Mizner, who were therein stated to have purchased that interest. But there is nothing to indicate that they gave or were to give any consideration. The remaining $36,000 was to be sold for working capital, after allowing Doyle $4000 to be sold for Doyle's benefit in payment for certain claims sold to the company, and for which he was to turn in $4000 of his stock. The first $500 raised was to go towards paying the chattel mortgage. Without some further showing it would seem that under this arrangement Doyle furnished the entire original capital, and Gray and Mizner got their share out of him for nothing.

There was a paper introduced which, if genuine and properly dated, showed that on the 1st of February, 1875,

articles were signed by the three, in accordance with the agreement, containing further a provision that there should be three directors and no more, and giving the directors the exclusive right to make and change by-laws. One of these papers was filed with the Secretary of State February 3, and one with the city clerk of Detroit April 6, 1875. It does not appear that any copy was filed with the Wayne county clerk. And no by-laws were shown to have been adopted.

On the 11th of February, 1875, a transfer in writing was signed by the three parties, of all the property of the Detroit Manufacturing Company to the Chemical Works for the expressed consideration of $14,000, "subject to a claim of about $500, held by Kane & Hibbard (or their client), of Detroit, Michigan." This claim was probably the Frank mortgage. Whether this transfer ever became operative is one of the questions in the case.

Doyle's ground of action is based on the claim that he never transferred his rights to any one, and that the paper in question was not to become operative until he received consideration by payment for his goods. His testimony if believed shows that the paper was never delivered in such a way as to belong to the Detroit Chemical Works, or to pass any title until paid for. Upon this a chief part of the controversy turns. But all of the issues are connected with some questions of evidence which require notice. And, inasmuch as it was insisted on the part of Doyle that the whole corporation arrangement was a fraud, and as no one was interested in it or in its existence except the parties to this suit, the regularity of its organization, and the fact of its existence, may become material.

It is claimed for the defense that Doyle, having dealt with it and acted with Gray and Mizner, is estopped from denying its corporate existence. There are certainly many cases in which a recognition of corporate existence by dealing with the corporation, will estop from ques-

tioning it. But this doctrine rests on the ground that such action creates relations and encourages conduct which there may be difficulty in undoing. In ordinary cases such recognitions have been considered as binding.

But this rule is one originating in equitable principles, and cannot be applied universally. There would be no sense in applying it where no new rights have intervened, and where such recognition has itself been brought about by fraudulent dealings carried on for the very purpose of entrapping a party into the action on which such recognition is rested. If there was no corporation in fact, and if there are no facts which make it legally unjust to forbid its denial, it is difficult to understand what room there is for an estoppel. And inasmuch as facts were asserted by plaintiff tending to show good reasons why he should not be estopped, and that testimony was open to the jury, the rulings upon the proof of corporate existence are fairly open to review.

The incorporation was sought to be shown by asking Doyle on cross-examination concerning the signing of a paper purporting to be articles of incorporation, which had been filed in the Detroit city clerk's office, April 6, 1875. This paper was not acknowledged, and was not filed in the county clerk's office. A copy of the same paper was certified by the Secretary of State; but his certificate did not give a copy of any acknowledgment, but merely said the paper was accompanied by an acknowledgment in the usual form. The original paper had an unsigned certificate of acknowledgment.

Under our present Constitution, no charters can be granted, and all private corporations must be organized under general laws, and can only be valid when strictly conforming to all the conditions imposed upon their completion. The statute concerning manufacturing corporations expressly requires that the articles shall be "acknowledged before some person authorized by the laws of this State to take acknowledgments of deeds." Comp. L., § 2839. And the previous section required

that before any such corporation should commence business, the articles should be filed with the Secretary of State and county clerk. § 2838.

Apart from any circumstances which might bind parties by a recognition of an association *de facto*, it is very clear that so long as they refrain from acknowledging their articles these remain inchoate and imperfect. There is no statute which provides—as in case of deeds—for proving them without an acknowledgment, or for compelling their acknowledgment. The articles proved by the cross-examination of Doyle did not comply with the statute.

We have, of course, no means of knowing whether any other paper ever got into the office of the Secretary of State, although the history of the case seems to negative any such fact. But the certificate of the Secretary is of no validity as evidence. A paper without acknowledgment could not lawfully be filed and recorded in his office. When he certifies he must certify to a copy of the entire document. It is not within his province to certify to a legal conclusion as to the character of an acknowledgment. He must give an accurate copy of it. His duty is purely ministerial, and an imperfect copy is no copy. The copy is only evidence as the original, if produced, would be evidence, and must exactly represent it. Comp. L., § 5931.

There was, therefore, no incorporation shown, and therefore for the purposes of this case none exists as a matter of fact. The only way in which under these circumstances any question of corporate action could arise, would be by way of estoppel. And it is important to see how far relations existed which might create it, and whether any one shows a right to rely on it.

By the contract of January 27, 1875, Doyle agreed to transfer his assets to the company as soon as it should become incorporated. The whole consideration of that agreement rested on the creation of stock which was to be in part apportioned, and in part sold as agreed.

Nothing but stock of such a nature as to be lawfully transferable as such could satisfy the agreement. And until provision was made which secured this no consideration existed for the transfer, and there was no promise to make it. This becomes material in another point of view which will be referred to presently.

To what extent, if any, the action of these parties on the assumption there was a corporation would estop them as against third parties dealing with them, can only be decided when such cases arise. As between themselves there can be no such estoppel where Mizner and Gray are not injured by any honest reliance on Doyle's action to their prejudice. Each of them knew what was done, and was bound in law to know there was no incorporation. If a mistake of law would exonerate them from this rule, it would also exonerate Doyle, and would still bind him by no estoppel extending beyond such results as came from an honest reliance on his acts. They could claim no interest in his property for which no consideration passed, and they could claim no rights against him except to the extent of their damage by a justifiable reliance on what had been done to their prejudice by his procurement or encouragement.

If it was understood the bill of sale was not to take immediate effect, then no title could pass to the concern either corporation or unincorporated. And, as already seen, there was no state of things which formed any legal consideration for the transfer under the agreement of January, 1875. We think the court erred in connecting the transfer with that agreement, if there was no actual incorporation. In the absence of an actual incorporation the transfer must be regarded as a new and distinct arrangement, resting on its own consideration. It could not be valid unless delivered, and where the same persons are grantors and representatives of the grantees, there must be distinct evidence that it was intended to be operative, which its signature alone would not give. And if there was no corporate existence, not

only does the consideration of the transfer expressed on its face utterly fail, but the further difficulty arises that there is absolute identity between grantors and grantees, with nothing to distinguish it from any other grant of a party to himself. From such a document no new rights could arise as between the parties.

It is claimed, however, that the title of Kane may be maintained by estoppel, even though as between the parties none would arise. The court below ruled in substance that, inasmuch as the mortgage given him was in favor of creditors who could hold the parties to have been incorporated, that circumstance made him equivalent to a *bona fide* holder. The court held Kane would be protected if he was ignorant of the conditional character of the delivery of the transfer, and if he understood the chattel mortgage was intended for the benefit of creditors.

We see no reason to change the view expressed on the former hearing of this cause, on which we came to a different conclusion. Mr. Kane was not employed by creditors and did not represent them. Had he done so, there was no extension of time or other advantage given which would have made out a case of a mortgage in good faith entitled to be protected. But he was sworn on his own behalf, and testified positively that he was informed by Gray and Mizner that Doyle was in charge as general manager, and that the object of giving the proposed chattel mortgage on property very largely in excess of its face was to get the property out of his hands to pay the claims which they said existed, and Doyle would not pay. The fact that the mortgage was hostile to Doyle was unquestionably prominent. The only authority for its execution was an express resolution passed the same day at a directors' meeting held by Gray and Mizner, at which Doyle was not present, and of which it is not claimed he was lawfully notified; and that resolution shows on its face that the mortgage was made for the express purpose of immediately strip-

ping Doyle of possession. Had there been a regular incorporation, such a resolution, passed by two out of three directors in the absence of a third not regularly and sufficiently notified, would furnish no authority for the execution of such a document. *Covert v. Rogers*, 38 Mich., 363. Moreover, the mortgage executed is not a general one as provided for by the resolution, which was not confined to any specific sum nor to particular creditors, but was to be for all the creditors. It is impossible on any theory to uphold Kane's claim as a *bona fide* mortgagee.

Kane was allowed, in explaining how he came to take the mortgage, to give a long narrative of the statements of his co-defendants concerning their previous dealings with Doyle. This was clearly erroneous. It substituted hearsay of parties interested for legal proof, and was not necessary to describe the *res gestæ*. Gray and Mizner themselves when sworn gave no such full account under oath, and practically obtained the benefit of their own unsworn statements. There is more or less similar hearsay testimony from other witnesses.

Testimony was introduced showing a subsequent sale under the Frank mortgage, and some objection was made to it, as well as to proof of other subsequent transactions. But upon this the court charged that if there was any right of recovery in the plaintiff, he could recover the actual value of what was taken, with interest from the time of taking, less the actual amount of that mortgage. This ruling did away with any mischief which such testimony might otherwise have caused.

The judgment must be reversed with costs and a new trial granted.

The other Justices concurred.