NICHOLS *v.* BUELL.

1. LIMITED PARTNERSHIP ASSOCIATIONS—DE FACTO ORGANIZATION —PROMOTERS — FRAUD OF ONE MEMBER — FAILURE TO FILE ARTICLES.

   Defendants attempted to form a limited partnership associa- tion, but failed to record the articles of association which were signed by them: they stated in the instrument signed by them that the stock was paid by trade-marks, processes, machinery, and property transferred to the company at a stated valuation: complainant was induced to become a stockholder by representations that the other stock had been paid for in the same manner as his own and that the concern owned valuable property and contracts: the representations were untrue and the value of the property was very greatly exaggerated. *Held* that the complainant was entitled to a rescission and a decree for the repayment of his subscription.

2. SAME.

   The parties to the attempted association were copartners, and liable for the damages resulting from the fraud of one of them.

3. SAME—ESTOPPEL—DE FACTO ORGANIZATION.

   No estoppel to deny the existence of a proper organization arises against a party so defrauded.

Appeal from Branch; Yaple, J. Submitted February 25, 1909. (Docket No. 22.) Decided July 15, 1909.

Bill by Morey A. Nichols against Darius D. Buell and others for the cancellation of an alleged certificate of stock, and the repayment of its purchase price. From a decree for complainant, defendants appeal. Affirmed.

*Jonathan Palmer, Jr.* (*Elbridge F. Bacon* and *Campbell & Johnson,* of counsel), for complainant.

*Frank B. Reynolds* (*John B. Shipman* and *Mark S. Andrews,* of counsel), for defendants.

HOOKER, J. Defendants associated in a common en-

terprise at the suggestion of Johnson, one of their number. The scheme was to form a partnership association, limited, for the manufacture and sale of yeast cakes. On June 6, 1902, they held a meeting, and executed alleged articles of association. These were never filed or recorded as required by law, and have been lost or suppressed, probably by Johnson, who was named as secretary, and with whom they remained after the meeting. Oral testimony of the contents was given by a lawyer who drew them. The capital stock was made $400,000, divided into shares of $100 each, $115,000 of which was said to be "paid in, and to be paid" as follows: *i. e.*, all of the $115,000 was stated to be paid in, in personal property, except $5,250, which was to be paid in cash, when it should be called for. The personal property was set forth as follows:

"*Schedule A*, heretofore referred to, and which is made a part of these articles, is as follows, to wit: Trademarks, processes and devices, chemical, mechanical and scientific, for the manufacture of pure food and dry yeast cakes and other cereals. Inventions, mechanical and scientific, of machinery and appliances and combinations of the same, for the manufacture of pure food and dry yeast cakes from cereals. Certain machinery, rollers, cookers, bakers, dryers, etc., now in the city of Detroit, Michigan, completed and in process of completion. A certain contract of employment for five years with an expert manufacturer of pure food and dry yeast cakes from cereals, all of the collective value of one hundred and nine thousand seven hundred and fifty dollars ($109,-750.00). The total paid-up capital is one hundred and fifteen thousand dollars ($115,000), the remaining two hundred and eighty-five thousand dollars ($285,000.00) of the capital stock of this association remains in the treasury to be disposed of from time to time, and to be applied to the purposes of and for the promotion of the interests of the association. The value hereby placed on the property placed in the schedule is the agreed and appraised value of such property collectively by all the members subscribing to the capital stock of this association, and the subscriptions of said parties to said capital stock signifies their approval of said value."

The $115,000 of stock was divided between the defendants in lots of $10,000. George Oaks (not a party to this record for some unexplained reason) received $5,000.

The plan of these defendants was to obtain this stock at a cost of 5 per cent. par value, which was all they paid or contributed, and depend upon sales of treasury stock for a working capital, and they proceeded to make such sales forthwith. A glowing account of the new company and its prospects was published, and within a few days sales were made, complainant subscribing for 50 shares in writing as follows:

"UNION CITY, MICH., June 10, 1902.

"I hereby subscribe for fifty (50) shares of $100 each of the capital stock of the 'Peerless Yeast Company, Ltd.' of Union City, Michigan, and agree to pay $25.00 per share for same to the treasurer of said company when called upon by the treasurer for such payments.

"M. A. NICHOLS."

He paid $1,250 in cash therefor, and received a certificate as follows:

"INCORPORATED UNDER THE LAWS OF THE STATE OF MICHIGAN.

"No. 21.                                    Shares 50.

"THE PEERLESS YEAST COMPANY, Limited.

"Union City, Michigan.

"Capital Stock, $400,000.

"This certifies that Morey A. Nichols is the owner of fifty shares of one hundred dollars each of the capital stock of the Peerless Yeast Company, Limited, fully paid and nonassessable transferable only on the books of the corporation by the holder hereof in person or by attorney upon surrender of this certificate properly indorsed.

"In witness whereof, the said corporation has caused this certificate to be signed by its duly authorized officers and to be sealed with the seal of the corporation at Union City, Mich., this 6th day of August, A. D. 1902.

"THE PEERLESS YEAST COMPANY, Ltd.,

"Union City, Michigan.

[Seal.]                    "D. D. BUELL, President.

"HOLMES W. JOHNSON, Secretary.

"Shares $100 each."

Complainant filed the bill in this cause for a cancellation of this instrument, and to recover the amount paid by him, on discovering that articles were not filed, upon the ground that he was defrauded by the defendants in this transaction, alleging and producing testimony tending to prove that the defendants represented to him that they paid 25 per cent. of the par value of their stock "the same as he did," and that they were a partnership association limited; that they had each subscribed for stock in the identical form asked of him, and the subscriptions were exhibited to him by Johnson. His subscription was made June 10, 1902. The learned circuit judge sustained his contention and granted him the relief prayed, and the defendants (with the possible exception of Johnson, against whom the bill is taken as confessed) have appealed.

The proofs show that all of the defendants joined in the promotion and attempted organization of the company. Johnson, who professed to own the property mentioned in Schedule A, arranged with his codefendants for the floating of the project, and it was agreed that they should subscribe for their respective shares, that but 25 per cent. of the par value should be assessed, and that of this 20 per cent. of the par value should be credited upon such subscriptions as their respective shares of the property and rights included in Schedule A, which he was to furnish. There is testimony showing that Johnson led complainant to believe that the defendants had paid the same price for stock that he was asked, and he had no intimation that but 5 per cent. had been paid in cash. The property mentioned in Schedule A is shown to have been of very little, if any, value.

There was no machinery belonging to Johnson, no trade-marks or devices of any value. It is claimed that Johnson had a formula for making yeast cakes, but it was never communicated to anyone else, and there is reason to believe that all there was of this was in the mind of a person whom he proposed to employ for the con-

cern, under an alleged contract with such person which he claimed to have, but which never was, transferred to the defendants or said proposed association. Furthermore, no formula was mentioned in the articles, unless it is covered by the terms "processes and devices" for the manufacture, etc. Schedule A was a fiction by which to make it appear that certain stock was paid for by the transfer of personal property; and, if it were good between the parties to it, it was a fraud upon purchasers, who were led to buy stock through the misrepresentation that the original stockholders had paid for their stock at the same price charged them. There was ample evidence from which the learned circuit judge might infer that these defendants, knowing that they paid a nominal sum for their stock, expected that later purchasers of stock would be misled as to the value of the assets, which plainly were grossly exaggerated, if not known to all of them to be purely fictitious. See *Wood* v. *Sloman*, 150 Mich. 177 (114 N. W. 317).

At the time this subscription was made, these defendants were not a partnership association, limited; for, although it be conceded that they had executed articles of association, they had not been recorded, and the claim that they had then become a *de facto* partnership association, limited, has no substantial foundation at that time, if such claim could relieve defendants, in a case like this, in any case where the statute as to filing articles had not been complied with—a question we do not pass upon. See *Elgin Nat. Watch Co.* v. *Loveland*, 132 Fed. 41; *Fredenburg* v. *M. E. Church*, 37 Mich. 476, and note; *Doyle* v. *Mizner*, 42 Mich. 332–337 (3 N. W. 968).

In the original enterprise these defendants were copartners, and each was responsible for what was done in the furtherance of the original scheme. They were all liable for the damages resulting from the fraud in the furtherance of their common enterprise, the results of which they were to share in common.

It was contended on their behalf that complainant, hav-

ing dealt with defendants as a partnership association, limited, should be estopped from denying its existence as such, and therefore that his suit should have been planted against it as such, and that, if there is any liability at all, it is not against the defendants personally. This contention is practically covered by what has been said. At the time of his purchase there was no lawful partnership association, limited, and the rights which then accrued have not been lost. He accepted his certificate of stock, and retained it in the honest belief, not only that there was a limitation upon his liability as a partner, but in ignorance of the facts of its organization. As soon as ascertained, he took steps to protect himself from the consequences of being a copartner in the concern, and therefore liable for its past or prospective debts as a general copartner or otherwise, and to recover the damages sustained. We think equity has jurisdiction for both purposes. How far any existing creditors may be affected by this litigation we need not inquire, as they are not parties; but, as against these defendants, the complainant is entitled to have the certificate canceled, and to recover his damages. The other defendants in this case were undoubtedly imposed upon by Johnson, who led them into a losing venture, but that does not justify their building a company on air to the injury of others who, relying upon the known character and standing of those connected with and managing the enterprise, are induced to put in their money in ignorance of facts which, to say the least, the defendants participated in, with a view to profit at the expense of others.

The decree of the learned circuit judge is in all things affirmed, with costs.

BLAIR, C. J., and GRANT, MONTGOMERY, and OSTRANDER, JJ., concurred.