# STATE OF MICHIGAN

# COURT OF APPEALS

---

BRUCE KLAASEN,

        Plaintiff-Appellee,

v

DENNIS JONKER,

        Defendant,

and

ROBERT SWEEZIE,

        Defendant-Appellant.

UNPUBLISHED
July 31, 2018

No. 338257
Kent Circuit Court
LC No. 15-010895-CZ

---

BRUCE KLAASEN,

        Plaintiff-Appellee,

v

DENNIS JONKER and ROBERT SWEEZIE,

        Defendants,

and

VARNUM LLP,

        Appellant.

No. 338336
Kent Circuit Court
LC No. 15-010895-CZ

---

-1-

BRUCE KLAASEN,

        Plaintiff-Appellee,

v

DENNIS JONKER,

        Defendant,

and

ROBERT SWEEZIE,

        Defendant-Appellant.

No. 339167
Kent Circuit Court
LC No. 15-010895-CZ

Before: HOEKSTRA, P.J., and MURPHY and MARKEY, JJ.

PER CURIAM.

Plaintiff sued defendants, Dennis Jonker and Robert Sweezie, for breach of contract arising out of the sale of two condominium units to plaintiff, which were part of a beleaguered condominium development in Costa Rica that was marked by construction problems, funding issues, incompetence, and fraud and involved suspicious or dubious practices and dealings and questionable or nonexistent entities. The purchase agreement for the condominium units at issue was in the name of plaintiff, as buyer, and BreakWater Point SA, as seller, which entity did not exist. After years of patience and the expenditure of hundreds of thousands of dollars paid for the units by plaintiff, the condominium units were not delivered to plaintiff per the contract and he commenced this suit, alleging that defendants were partners in the development and subject to individual liability on the contract even though BreakWater Point SA was the vendor identified in the purchase agreement. The record revealed that one of the condominium units designated for plaintiff was sold to another individual and the second unit was encumbered by a $150,000 lien. This case hinged on whether defendants could be held personally liable for breach of contract. The trial court granted summary disposition under MCR 2.116(C)(10) in favor of plaintiff, later awarding him $683,563 in damages, and it denied Sweezie's competing motion for summary disposition.[1] The court later granted plaintiff's motion for sanctions under MCR 2.114, MCR 2.625, and MCL 600.2591, imposing them in the amount of $75,000 against both Sweezie and Sweezie's counsel, Varnum LLP. In Docket No. 339167, Sweezie appeals the trial court's ruling granting plaintiff's motion for summary disposition and the judgment awarding plaintiff

---

[1] Jonker did not challenge plaintiff's motion for summary disposition. Subsequently, plaintiff and Jonker reached a settlement after judgment was entered against defendants.

$683,563 in damages. In Docket No. 338257, Sweezie appeals the order awarding plaintiff $75,000 in attorney fees and costs as sanctions, while in Docket No. 338336, Varnum appeals this same order imposing sanctions. We affirm in all three of these consolidated appeals.

## I. DOCKET NO. 339167 – SUMMARY DISPOSITION IN FAVOR OF PLAINTIFF

With respect to the order granting summary disposition in favor of plaintiff and denying Sweezie's motion for summary disposition, the trial court found that Sweezie, Jonker, and Patrick Hundley entered into a joint venture to build the condominium complex, develop the project, and to sell condominium units to individuals. The court determined that the contract in dispute was signed by plaintiff, that Jonker signed the agreement on behalf of BreakWater Point SA, that BreakWater Point SA did not exist, and that plaintiff made payments under the contract totaling $516,666, yet one of his condominium units was sold to another person and the other unit was subject to a $150,000 lien, not of plaintiff's making. The trial court further ruled that two other companies purportedly associated with the development, BreakWater Point Condominium Corporation SRI and BW Point Condominium Trust SRL, were not parties to the purchase agreement, so plaintiff had no contract with either company and no basis to sue them. Additionally, the court indicated that individual contractual liability generally attaches to stockholders or members of a bogus legal entity if they authorized a contract and that, here, Sweezie negotiated the purchase agreement with plaintiff on behalf of the developers; therefore, he implicitly authorized and became personally liable on the contract. The court rejected Sweezie's argument that plaintiff's claim was barred by the doctrines of corporation by estoppel and misnomer of a corporate entity, where the defenses constituted affirmative defenses that were waived when Sweezie failed to raise either one in his first responsive pleading. Subsequently, judgment was entered in favor of plaintiff in the amount of $683,563, which included damages plus common-law and statutory interest. The judgment was joint and several against Sweezie and Jonker, but plaintiff then reached a settlement with Jonker for $50,000.

On appeal, Sweezie argues that the trial court erred in granting summary disposition in favor of plaintiff because Sweezie was not a party to the purchase agreement, because plaintiff failed to allege or establish facts allowing the court to pierce the corporate veil, because the doctrines of misnomer of a corporate entity and corporation by estoppel foreclosed plaintiff's argument that Sweezie could be held liable, and because the two doctrines are not affirmative defenses that had to be pleaded in Sweezie's first responsive pleading, so they were not waived. Sweezie contends that he rather than plaintiff was entitled to summary disposition.

This Court reviews de novo a trial court's ruling on a motion for summary disposition. *Hoffner v Lanctoe*, 492 Mich 450, 459; 821 NW2d 88 (2012). Additionally, this Court reviews

-3-

de novo issues concerning the proper interpretation of a contract and the legal effect or application of a contract. *Rory v Continental Ins Co,* 473 Mich 457, 464; 703 NW2d 23 (2005).[2]

"The cardinal rule in the interpretation of contracts is to ascertain the intention of the parties[;] [t]o this rule all others are subordinate." *McIntosh v Groomes*, 227 Mich 215, 218; 198 NW 954 (1924). In light of this rule, "[i]f the language of the contract is clear and unambiguous, it is to be construed according to its plain sense and meaning; but if it is ambiguous, testimony may be taken to explain the ambiguity." *New Amsterdam Cas Co v Sokolowski*, 374 Mich 340, 342; 132 NW2d 66 (1965); see also *Frankenmuth Mut Ins Co v Masters,* 460 Mich 105, 111; 595 NW2d 832 (1999).

"A party asserting a breach of contract must establish by a preponderance of the evidence that (1) there was a contract (2) which the other party breached (3) thereby resulting in damages to the party claiming breach." *Miller-Davis Co v Ahrens Constr, Inc*, 495 Mich 161, 178; 848 NW2d 95 (2014). "A valid contract requires five elements: (1) parties competent to contract, (2) a proper subject matter, (3) legal consideration, (4) mutuality of agreement, and (5) mutuality of

---

[2] In *Pioneer State Mut Ins Co v Dells*, 301 Mich App 368, 377; 836 NW2d 257 (2013), this Court set forth the governing principles applicable to motions for summary disposition brought pursuant to MCR 2.116(C)(10):

> In general, MCR 2.116(C)(10) provides for summary disposition when there is no genuine issue regarding any material fact and the moving party is entitled to judgment or partial judgment as a matter of law. A motion brought under MCR 2.116(C)(10) tests the factual support for a party's claim. A trial court may grant a motion for summary disposition under MCR 2.116(C)(10) if the pleadings, affidavits, and other documentary evidence, when viewed in a light most favorable to the nonmovant, show that there is no genuine issue with respect to any material fact. A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ. The trial court is not permitted to assess credibility, weigh the evidence, or resolve factual disputes, and if material evidence conflicts, it is not appropriate to grant a motion for summary disposition under MCR 2.116(C)(10). A court may only consider substantively admissible evidence actually proffered relative to a motion for summary disposition under MCR 2.116(C)(10). [Citations and quotation marks omitted.]

"Like the trial court's inquiry, when an appellate court reviews a motion for summary disposition, it makes all legitimate inferences in favor of the nonmoving party." *Skinner v Square D Co*, 445 Mich 153, 162; 516 NW2d 475 (1994); see also *Dextrom v Wexford Co*, 287 Mich App 406, 415; 789 NW2d 211 (2010) (a court must draw all reasonable inferences in favor of the nonmoving party).

obligation." *AFT Mich v Michigan*, 497 Mich 197, 235; 866 NW2d 782 (2015). "The party seeking to enforce a contract bears the burden of proving that the contract exists." *Id.*

Sweezie contends that there could be no breach of contract action against him because he was not a party to the contract. We note that BreakWater Point SA was not a party competent to contract, as it was a nonexistent entity, and thus, on its face, the contract would appear to be invalid. However, for the reasons set forth below, we hold that by operation of law, Sweezie was properly treated as a party to the contract under the circumstances presented, as well as Jonker, making them liable for the breach that indisputably occurred and the resulting damages that indisputably were sustained by plaintiff.

The documentary evidence established that Hundley relocated to Costa Rica to oversee the development of the project and the construction of the condominiums, while defendants remained in Michigan to sell individual condominium units, with the proceeds of the sales being used to finance the construction and project.[3] The three men operated under an informal agreement, and any profits from the venture were to be shared between them. It appears to us that defendants and Hundley engaged in a "joint venture," which is defined as "an association to carry out a single business enterprise for a profit." *Kay Investment Co, LLC v Brody Realty No 1, LLC*, 273 Mich App 432, 437; 731 NW2d 777 (2006) (quotation marks omitted). A joint venture differs from a partnership, in that a partnership is "an association of persons to carry on as coowners a business for profit." *Id.* at 436-437, citing MCL 449.6. Defendants and Hundley were not operating an ongoing business; rather, they joined forces for a specific condominium project.[4] The *Kay Investment* panel explained that a joint venture has the following elements: an

---

[3] There were two condominium projects, the Palms and BreakWater Point, the latter of which is the subject of this case, as plaintiff's two units were part of the BreakWater Point project. Plaintiff had earlier purchased a unit in the Palms.

[4] In *Kay Investment*, 273 Mich App at 436, this Court ruled:

> The parties dispute whether Robert Brody, George Brody, Joseph Kaufman, and Harold Kaufman intended to create a partnership or a joint venture. We hold that the record evidence compels the conclusion that the original parties to the agreement intended to and did in fact create a joint venture, with the sole purpose of developing and renting out a retail shopping center in Southgate.

The BreakWater Point condominium project was akin to the development of the retail shopping center at issue in *Kay Investment*. Similarly, in *Summers v Hoffman*, 341 Mich 686, 693; 69 NW2d 198 (1955), the Michigan Supreme Court observed:

> A consideration of the salient facts in the instant case shows that the contract embodied characteristics of a joint venture. A single project was involved, namely, the development and sale of two large parcels of real estate. The profits, after expenses, were to be divided 50 per cent to plaintiff and 50 per cent to defendants. Both made a contribution: plaintiff contributed his time, skill and supervision, while defendants contributed the capital.

agreement indicating an intention to undertake a joint venture; a joint undertaking of a single project for profit; a sharing of profits as well as losses; contribution of skills or property by the parties; and community interest and control over the subject matter of the enterprise. *Id.* at 437.

But even if the association between defendants and Hundley was a partnership, it would not alter our ultimate ruling.[5]  In *Keiswetter v Rubenstein*, 235 Mich 36, 45-46; 209 NW 154 (1926), our Supreme Court explained:

> A "joint adventure" is defined as an association of two or more persons to carry out a single business enterprise for profit. While under the present state of the law courts do not treat a joint adventure as in all respects identical with a partnership, the contractual relations of the parties and nature of their association are so similar and closely akin to a partnership that it is commonly held their rights and liabilities are to be tested by the same rules that govern partnerships.

> By the same token it is claimed Rubenstein was in sole control of construction, Hammel was in sole control of their accounts and the money essential to finance the enterprise, of which he never let Rubenstein handle a dollar, except his weekly stipend; but, whatever either was exclusively authorized to do under their agreement, or did, each was acting for both in furtherance of their joint adventure, or enterprise for their mutual profit. . . . .

> "When two persons are engaged in the prosecution of a joint enterprise, each has authority to act for both in respect to the means or agencies employed to execute the common purpose, and the negligence of one in the management thereof will be imputed to both." [Citations and quotation marks omitted.]

And under partnership law, subject to some exceptions, all partners are jointly liable "for all . . . debts and obligations of the partnership."  MCL 449.15(b).

Whether as a joint venture or a partnership, the question is whether Sweezie, working within the context of that business relationship, could be held liable on the purchase agreement, even though he was not named as the seller in the contract.  In *Campbell v Rukamp*, 260 Mich

---

[5] "A partnership is an association of 2 or more persons . . . to carry on as co-owners a business for profit . . . ."  MCL 449.6(1).  "[T]he intent to create a partnership is not required if the acts and conduct of the parties otherwise evidence that the parties carried on as co-owners a business for profit."  *Byker v Mannes*, 465 Mich 637, 653; 641 NW2d 210 (2012).  "Stated more plainly, the statute does not require partners to be aware of their status as 'partners' in order to have a legal partnership."  *Id*. at 646.  "[I]n ascertaining the existence of a partnership, the proper focus is on whether the parties intended to, and in fact did, carry on as co-owners a business for profit and not on whether the parties subjectively intended to form a partnership."  *Id*. at 653 (quotation marks).  Assuming that defendants' and Hundley's relationship related to carrying on a business enterprise, perhaps the ongoing construction and sale of condominiums given the Palms development, their association would qualify as a partnership.

43; 244 NW 222 (1932), a proposed corporation was never organized, articles of incorporation were not executed, and stockholder meetings were not held; there was neither a *de jure* nor a *de facto* corporation. As such, the proposed corporation could not exercise any corporate rights, assert corporate powers, or assume corporate liabilities. *Id.* at 44-46. The Supreme Court stated that where an individual assumes to act as a corporation and contracts as a corporation, but the corporation is nonexistent, the individual will be held personally liable on the contract. *Id.* at 46. And individual liability similarly attaches to ostensible members or stockholders of a pretended corporation on contracts entered into in the name of the nonexistent corporation if the members or stockholders authorized the contract, expressly or impliedly. *Id.* The *Campbell* Court further indicated that if promoters of a proposed corporation conduct business with creditors in the name of the corporation absent its existence, the promoters are generally liable to the creditors as partners. *Id.*

We conclude that the *Campbell* decision supports the proposition that if a contract is executed in the name of a nonexistent corporation and there is a breach of that contract, the damaged contracting party can file suit for breach of contract against individual promoters, subscribers, purported members and stockholders, and, by analogy, joint venturers and partners involved in authorizing or procuring the contract in furtherance of the joint venture or partnership, even though those individuals were not signatories to the contract. Here, Jonker signed the purchase agreement on behalf of BreakWater Point SA, and thus he was properly held liable for breach of contract for authorizing the sale, perhaps explaining why Jonker wisely did not challenge plaintiff's motion for summary disposition. Sweezie was in no better position, considering that he implicitly authorized and minimally procured the contract in the name of the nonexistent corporation and in furtherance of the joint venture or partnership, where he stood to profit had the development been a success. Plaintiff met with Sweezie in Sweezie's West Michigan office, and plaintiff was shown artist renditions of BreakWater Point, with Sweezie representing himself as being involved in the development of the project. Sweezie made the sales pitch to plaintiff, and after plaintiff later decided to purchase the two condominium units, Sweezie's agent presented plaintiff with the purchase agreement, which plaintiff executed. Plaintiff wired an initial payment to a Costa Rican attorney involved in the development, and Sweezie or his agent accepted a subsequent payment from plaintiff. Under all of the surrounding circumstances and *Campbell*, 260 Mich 43, Sweezie, while not signing or being named as a party to the contract, was subject to liability for breach of contract, just as if he had been an express party to the purchase agreement.[6]

---

[6] There was no evidence indicating that Sweezie was involved in any fraud related to the project, and it appears that he was an innocent party caught up in a grander scheme perpetrated by Hundley and others in Costa Rica. But that does not absolve him from liability for breach of contract. The evidence revealed, including Sweezie's own testimony, that his role in the development was to use his skills to generate sales for the project and that he stood to share in the profits had they been realized. As such, he was a joint venturer or partner and liable on the contract, given that the corporate entity identified in the contract was nonexistent. And Sweezie's assumption that BreakWater Point SA existed or his belief that others would form any necessary corporate entities also does not absolve him from liability under the contract.

Sweezie next argues that plaintiff failed to allege or establish facts allowing the court to pierce the corporate veil. This contention is a nonstarter – BreakWater Point SA was not an existing corporation; therefore, there was no corporate veil to pierce. And we have already explained the legal basis for holding Sweezie liable for breach of contract.

Sweezie additionally maintains that the doctrines of misnomer of a corporate entity and corporation by estoppel foreclosed plaintiff's argument that Sweezie should be held liable, where BreakWater Point SA was never properly formed. Sweezie further argues that the two doctrines are not affirmative defenses that had to be pleaded in Sweezie's first responsive pleading, so they were not waived.

The misnomer doctrine provides that "[t]he misnomer of a person or corporation in a written instrument will not defeat a recovery thereon if the identity sufficiently appears from the name employed in the writing or is satisfactorily established by proof." *PIM, Inc v Steinbichler Optical Techs USA, Inc*, 468 Mich 896; 660 NW2d 73 (2003). With respect to corporation by estoppel, in *Duray Dev, LLC v Perrin*, 288 Mich App 143, 152-153; 792 NW2d 749 (2010), this Court explained:

> Corporation by estoppel . . . is an equitable remedy and does not concern legal status. The general rule is: Where a body assumes to be a corporation and acts under a particular name, a third party dealing with it under such assumed name is estopped to deny its corporate existence. Like the de facto corporation doctrine, corporation by estoppel often arises in the context of assessing individual versus corporate liability. The purpose of the doctrine is so that one who contracts with an association as a corporation is estopped to deny its corporate existence so as to prevent one from maintaining an action on the contract against the associates, or against the officers making the contract, as individuals or partners.

> In sum, . . . [t]he corporation by estoppel doctrine prevents a party who dealt with an association as though it were a corporation from denying its existence. . . . .

Under MCR 2.111(F)(2), "[a] party against whom a cause of action has been asserted by complaint . . . must assert in a responsive pleading the defenses the party has against the claim[,]" and except for lack of subject-matter jurisdiction and failure to state a claim, "[a] defense not asserted in the responsive pleading or by motion as provided by these rules is waived[.]"[7] Interestingly, this provision does not indicate that it pertains solely to affirmative

---

[7] MCR 2.111(F)(2)(a) and (b) allow a party to raise a defense outside a responsive pleading, where, respectively, a party asserts the defense in a motion for summary disposition filed under MCR 2.116 before filing a responsive pleading, or where a responsive pleading is not required, in which case the defense can first be raised at trial, subject to any pretrial order limiting the issues to be tried.

defenses. Indeed, failure to state a claim is plainly not an affirmative defense, yet our Supreme Court in crafting the court rule felt the need to expressly exclude that defense from being encompassed by the waiver rule. See *Stanke v State Farm Mut Auto Ins Co*, 200 Mich App 307, 312; 503 NW2d 758 (1993) ("An affirmative defense is a defense that does not controvert the plaintiff's establishing a prima facie case, but that otherwise denies relief to the plaintiff."). MCR 2.111(F)(3) goes on to provide:

> Affirmative defenses must be stated in a party's responsive pleading, either as originally filed or as amended in accordance with MCR 2.118. Under a separate and distinct heading, a party must state the facts constituting

> (a) an affirmative defense, such as contributory negligence; the existence of an agreement to arbitrate; assumption of risk; payment; release; satisfaction; discharge; license; fraud; duress; estoppel; statute of frauds; statute of limitations; immunity granted by law; want or failure of consideration; or that an instrument or transaction is void, voidable, or cannot be recovered on by reason of statute or nondelivery;

> (b) a defense that by reason of other affirmative matter seeks to avoid the legal effect of or defeat the claim of the opposing party, in whole or in part;

> (c) *a ground of defense that, if not raised in the pleading, would be likely to take the adverse party by surprise.* [Emphasis added.]

MCR 2.111(F)(3)(c) says nothing about the defense having to be affirmative in nature, which attribute appears to be fully covered by subrules (F)(3)(a) and (b). Instead, MCR 2.111(F)(3)(c) is concerned with defenses that would likely take an adverse party by surprise. When MCR 2.111(F)(2) is read in conjunction with MCR 2.111(F)(3)(c), it becomes clear that some defenses, even if not affirmative in nature, are subject to waiver if not timely pled.[8] And plaintiff specifically argues that "even if a defense is not 'affirmative,' it must still be pled if [it] is 'likely to take the adverse party by surprise.' " (Quoting MCR 2.111[F][3][c]; emphasis omitted.) Sweezie makes no attempt to counter this argument in his reply brief, ignoring it completely.

We find implicit support for our position in *Campbell v St John Hosp*, 434 Mich 608, 616; 455 NW2d 695 (1990), wherein our Supreme Court, after determining that an agreement to arbitrate constitutes an affirmative defense, further stated:

---

[8] In fact, it is arguable that MCR 2.111(F)(2) stands completely on its own in regard to waiver, capturing all defenses, aside from the two exceptions, with MCR 2.111(F)(3), which makes no mention of waiver but mandates that an affirmative defense be raised in a responsive pleading, setting forth the rules that affirmative defenses must be listed under a separate and distinct heading and that the facts constituting any affirmative defense must be provided.

Even if we were to interpret subsection MCR 2.111(F)(3)(a) restrictively, other language in MCR 2.111(F)(3) suggests that it was incumbent upon the defendants to assert the arbitration agreement in their responsive pleadings. MCR 2.111(F)(3)(c) requires the inclusion of a ground of defense which would be likely to surprise the adverse party. While the instant plaintiff may or may not have been surprised in fact by the existence of the arbitration agreement, personal representatives of patients who die following the signing of an agreement generally may be quite likely to be taken by surprise by the existence of such a document. [Quotation marks omitted.[9]]

This passage indicates that even if the arbitration agreement did not qualify as an affirmative defense, our Supreme Court was still prepared to employ waiver on the basis of the "surprise" provision in MCR 2.111(F)(3)(c). Here, although the trial court did not frame its decision in terms of plaintiff being surprised by the doctrines or defenses of misnomer of a corporate entity and corporation by estoppel, it did state that plaintiff would be prejudiced if Sweezie was permitted to assert those defenses at such a late date, given that discovery had closed two months earlier, that Sweezie first raised the defenses at the time of summary disposition, and that plaintiff indicated that further discovery would be necessary to properly address and confront those defenses. The element or concept of surprise was certainly encapsulated by the trial court's ruling. And we hold that, assuming the two doctrines do not constitute affirmative defenses, they were nonetheless waived by Sweezie's failure to raise them in his answer, considering that the defenses were likely to and did take plaintiff by surprise. Although it was no surprise that Sweezie denied liability under the purchase agreement because he was not named as a party in the contract, the decision by Sweezie to place reliance on two doctrines that have produced scant caselaw over the last 100+ years and are not often seen by the courts would qualify as a surprise. Reversal is unwarranted.

Furthermore, MCR 2.111(F)(3)(a), which provides a list of examples of affirmative defenses, specifically identifies "estoppel" as an affirmative defense. Although we agree with Sweezie that there are many forms of estoppel, some of which are not affirmative defenses, e.g., promissory estoppel, Sweezie has not provided us with a persuasive argument that corporation by estoppel is not an affirmative defense. An affirmative defense "accepts the plaintiff's allegation as true and even admits the establishment of the plaintiff's prima facie case, but . . . denies that the plaintiff is entitled to recover on the claim for some reason not disclosed in the plaintiff's pleadings." *Stanke*, 200 Mich App at 312. "An affirmative defense is a defense that does not controvert the plaintiff's establishing a prima facie case, but that otherwise denies relief to the plaintiff." *Id.*

As indicated earlier, corporation by estoppel is often invoked "to prevent one from maintaining an action on the contract against the associates, or against the officers making the

---

[9] We note that MCR 2.111(F)(3)(a) was subsequently amended and now expressly lists "an agreement to arbitrate" as an affirmative defense.

contract, as individuals or partners." *Duray Dev*, 288 Mich App at 153. Contrary to Sweezie's argument, we conclude that corporation by estoppel does not controvert plaintiff's establishing a prima facie case for breach of contract. Rather, the doctrine accepts that a prima facie contract action against an individual associated with a nonexistent corporation has been made because there is in fact no legally recognizable corporate entity, but then precludes relief against the individual on an equitable basis, where it is affirmatively shown that the plaintiff had entered into the contract on the belief and expectation that he or she was dealing with a valid corporation. As such, corporation by estoppel operates like any other affirmative defense, e.g., a statute of limitations defense. Sweezie's analytical mistake is that he presumes that a prima facie case for breach of contract can only be made where the defendant was an actual party to the contract. In examining plaintiff's complaint, he alleged that the seller was BreakWater Point SA, that there was no such legal entity, that Sweezie acted as a partner in the development venture, that Sweezie negotiated the sale with plaintiff, and that Sweezie was thus individually liable for breach of contract as a partner under the circumstances. Considering the principles from *Campbell*, 260 Mich 43, regarding individual liability on a contract when the corporation named as a party in the contract does not exist, plaintiff had made a prima facie case for breach of contract. And Sweezie attempted to bar recovery by way of the affirmative defense of corporation by estoppel.

Additionally, the same can be said for the manner in which Sweezie sought to employ the doctrine of misnomer of a corporate entity, wielding it not as a means of recovery, see *PIM, Inc*, 468 Mich at 896, but essentially as an affirmative defense, in that it accepts the existence of a prima facie case for breach of contract, but then seeks to defeat that case by demanding that plaintiff sue BreakWater Point Condominium Corporation SRI or BW Point Condominium Trust SRL, as the doctrine would allegedly have permitted such a suit.

Moreover, in the context of Sweezie's proffered application of the doctrine of misnomer of a corporate entity, it is incumbent to find that *a* valid BreakWater Point-related corporation or entity did indeed exist and that it had the legal capacity to sell the condominiums; we know that it was not BreakWater Point SA. There is reference in the record to BreakWater Point Condominium Corporation SRI, which was apparently established in 2006, and BW Point Condominium Trust SRL, which, according to a Costa Rican attorney, was a valid entity established in Costa Rica. The record, however, is unclear with respect to the intent behind these entities and the role that they served in the condominium development. The record is devoid of information sufficient to show the nature of these entities.[10] There is no evidence that either one of these entities could lawfully have conveyed the condominium units to plaintiff under the contract. It is plain from the record that none of the individuals involved in the various Costa Rican endeavors were aware of whether the corporate entities existed or the purpose of each entity. The doctrine of misnomer of a corporate entity presupposes that a valid corporation does in fact exist but there are issues in how it was identified in the underlying contract. Therefore,

---

[10] This is further proof that the two corporate doctrines raised by Sweezie after discovery had closed were a surprise.

you cannot have misnomer of a corporate entity if there is no evidence of *any* valid corporation that could have sold the condominium units to plaintiff. On the existing record, there was *no* corporation or entity, whatever its moniker, for plaintiff to sue for the wrong done to him.

Finally, as to the substantive merit of corporation by estoppel, we have not been directed to, nor are we aware of, any cases where the doctrine has been invoked and applied where the entity at issue never became a valid, legally-recognized corporation or company after the contract, never had been a valid, legally-recognized corporation or company before the contract, and had never attempted to take steps to incorporate. Yet, on the existing record, that is the status of BreakWater Point SA. In *Duray Dev*, 288 Mich App at 148, the company at issue obtained "filed" status as a legitimate limited liability company after the contract in dispute was executed. There is no evidence that BreakWater Point SA ever became, ever was, or ever tried to be a valid corporation. We envision the doctrine being implicated where an entity failed to satisfy all of the technical formalities of incorporation, but there is no evidence that BreakWater Point SA fell into that category. Amongst the very few Michigan cases addressing the doctrine of corporation by estoppel is the very early case of *Doyle v Mizner*, 42 Mich 332, 336-337; 3 NW 968 (1879), where our Supreme Court made clear that the doctrine does not automatically apply simply because a nonexistent corporation was named as a party in a contract:

> There are certainly many cases in which a recognition of corporate existence, by dealing with the corporation, will estop from questioning it. But this doctrine rests on the ground that such action creates relations and encourages conduct which there may be difficulty in undoing. In ordinary cases such recognitions have been considered as binding.

> But this rule is one originating in equitable principles and cannot be applied universally. There would be no sense in applying it where no new rights have intervened, and where such recognition has itself been brought about by fraudulent dealings carried on for the very purpose of entrapping a party into the action on which such recognition is rested. If there was no corporation in fact, and if there are no facts which make it legally unjust to forbid its denial, it is difficult to understand what room there is for an estoppel[.]

We conclude that under the circumstances in the instant case, Sweezie was not entitled to rely on corporation by estoppel, even had he not waived the defense.

## II. DOCKET NOS. 338257 AND 338336 – SANCTIONS

The trial court ruled that plaintiff was entitled to sanctions covering attorney fees and costs under MCR 2.111 (waiver of affirmative defenses) and MCR 2.114(D), where Sweezie made denials in the answer to plaintiff's complaint that were not well-grounded in the facts and were false. The court also determined that sanctions were appropriate under MCL 600.2591, MCR 2.625(A)(2), and MCR 2.114(F), where Sweezie asserted frivolous defenses, i.e., misnomer of a corporate entity and corporation by estoppel, given that they were not timely raised and were waived. The trial court imposed sanctions in the amount of $75,000 against Sweezie and Varnum.

On appeal, Varnum argues that sanctions were not warranted because Sweezie's answer and motion for summary disposition were well-grounded in fact and not frivolous. Sweezie concurs in Varnum's argument on the matter. Varnum additionally contends that the trial court erred in awarding sanctions against Varnum, considering that the court did not make any findings particular to Varnum in ordering sanctions, and because the court deprived Varnum of due process by not giving it notice and an opportunity to be heard before entering sanctions against Varnum. We disagree.

With respect to a request for attorney fees under MCL 600.2591 and MCR 2.114, we review for an abuse of discretion the trial court's ruling on the request. *Edge v Edge*, 299 Mich App 121, 127; 829 NW2d 276 (2012). However, the court's underlying factual findings, including a finding of frivolousness, are reviewed for clear error. *Kitchen v Kitchen*, 465 Mich 654, 661; 641 NW2d 245 (2002); *Edge*, 299 Mich App at 127. Issues regarding the interpretation of MCL 600.2591 and MCR 2.114 are reviewed de novo on appeal. *Edge*, 299 Mich App at 127. The question whether a claim or defense is frivolous is evaluated at the time the claim or defense was raised. *In re Costs & Attorney Fees*, 250 Mich App 89, 94; 645 NW2d 697 (2002). The objective of sanctions "is to deter parties and attorneys from filing documents or asserting claims and defenses that have not been sufficiently investigated and researched or that are intended to serve an improper purpose." *FMB-First Mich Bank v Bailey*, 232 Mich App 711, 723; 591 NW2d 676 (1998). Sanction provisions should not be construed in a manner that has a chilling effect on advocacy, that prevents a party from bringing a difficult case, or that penalizes a party whose claim initially appears viable but later becomes unpersuasive. *Louya v William Beaumont Hosp*, 190 Mich App 151, 163; 475 NW2d 434 (1991). With respect to MCR 2.114 and MCL 600.2591, "[n]ot every error in legal analysis constitutes a frivolous position" and "merely because this Court concludes that a legal position asserted by a party should be rejected does not mean that the party was acting frivolously in advocating its position[,]" especially in regard to legal issues that are complex and not easily resolved. *Kitchen*, 465 Mich at 662-663.

"In an action filed on or after October 1, 1986, if the court finds on motion of a party that an action or defense was frivolous, costs shall be awarded as provided by MCL 600.2591." MCR 2.625(A)(2).[11] "Upon motion of any party, if a court finds that a . . . defense to a civil action was frivolous, the court that conducts the civil action shall award to the prevailing party the costs and fees incurred by that party in connection with the civil action by assessing the costs and fees against the nonprevailing party *and* their attorney." MCL 600.2591(1) (emphasis added).[12] The plain and unambiguous language of MCL 600.2591 mandates an award of attorney fees and costs if a defense to a civil action was frivolous, and it requires assessment of

---

[11] MCR 2.114(F) states that "a party pleading a frivolous . . . defense is subject to costs as provided in MCR 2.625(A)(2)."

[12] "The amount of costs and fees awarded under this section shall include all reasonable costs actually incurred by the prevailing party and any costs allowed by law or by court rule, including court costs and reasonable attorney fees." MCL 600.2591(2).

the fees and costs against both the party and the party's attorney. "Frivolous," as used in the statute, means, in part, that a "party had no reasonable basis to believe that the facts underlying that party's legal position were in fact true" or that a "party's legal position was devoid of arguable legal merit." MCL 600.2591(3)(a)(*ii*) and (*iii*).

The trial court did not clearly err in finding that Sweezie asserted frivolous defenses – misnomer of a corporate entity and corporation by estoppel. As explained above, these defenses or doctrines had been waived, and not only were they waived, there was no factual support for their application in the first place. Sweezie's position was devoid of arguable legal merit. And the trial court did not err in imposing sanctions under MCL 600.2591.

MCR 2.114 concerns the execution of court documents and applies to all pleadings, motions, affidavits, and other papers mandated by the court rules. MCR 2.114(A). The court rule provides in pertinent part:

> (D) The signature of an attorney or party, whether or not the party is represented by an attorney, constitutes a certification by the signer that
>
> (1) he or she has read the document;
>
> (2) to the best of his or her knowledge, information, and belief formed after reasonable inquiry, the document is well grounded in fact and is warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law; and
>
> (3) the document is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.
>
> (E) If a document is signed in violation of this rule, the court, on the motion of a party or on its own initiative, shall impose upon the person who signed it, a represented party, *or* both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the document, including reasonable attorney fees. . . . . [Emphasis added.]

In the instant case, the trial court held that sanctions were proper under MCR 2.114 on basis that Sweezie made "false denials" in his answer when responding to ¶ 7 and ¶ 22 of the complaint. The court indicated that there were more false denials, but found it unnecessary to review all of them. With respect to ¶ 22, Sweezie denied that he "invested capital and/or services in the BreakWater Point project and . . . stood to share in the profits generated by the development project." It is clear from the record that Sweezie invested services in BreakWater Point, as he solicited buyers for condominium units, and his agent maintained records and opened a bank account for the project. Additionally, in his deposition, Sweezie agreed that up until 2013, long after the contract with plaintiff was executed, Sweezie was operating on the belief and understanding that he was a one-third owner in the development and that any profits

would be divided three ways. Accordingly, contrary to the response to ¶ 22 of plaintiff's complaint, Sweezie had invested services in the BreakWater Point project and he "stood to share in the profits," although none were ever generated. This answer was not well-grounded in fact. Indeed, this false answer forced the litigation forward, demanding plaintiff to establish that Sweezie was in fact a partner or joint venturer as revealed by his contribution of services to the partnership or joint venture and the agreement to share in any profits; evidentiary demands that could have been avoided by a truthful response to ¶ 22. We need not even proceed to examine ¶ 7, which concerned the Palms development. We do note that in responding to ¶ 9 of the complaint, Sweezie denied that he was a partner or held any ownership interest in BreakWater Point. Sweezie's deposition testimony belied this answer.

Finally, we address Varnum's arguments regarding the imposition of sanctions against Varnum directly. We first reject the due process argument. "Due process in civil cases generally requires notice of the nature of the proceedings, an opportunity to be heard in a meaningful time and manner, and an impartial decisionmaker." *Cummings v Wayne Co*, 210 Mich App 249, 253; 533 NW2d 13 (1995). Moreover, in regard to notice, "[d]ue process is satisfied when interested parties are given notice through a method that is reasonably calculated under the circumstances to apprise them of proceedings that may directly and adversely affect their legally protected interests and afford them an opportunity to respond." *Wortelboer v Benzie Co*, 212 Mich App 208, 218; 537 NW2d 603 (1995).

As noted earlier, MCL 600.2591(1) requires that any award of sanctions be imposed "against the nonprevailing party *and* their attorney" (emphasis added), and MCR 2.114(E) allows the court, on motion of a party "or on its own initiative," to impose sanctions on the represented party, counsel, "or both." Accordingly, Varnum was aware from the start that it would be sanctioned along with Sweezie if frivolousness was established under MCL 600.2591, regardless of whom plaintiff requested sanctions against. And Varnum knew that it was potentially subject to sanctions under MCR 2.114(E), even if plaintiff only sought sanctions against Sweezie, considering that the court rule gives a trial judge *sua sponte* authority to impose sanctions against a party, the party's counsel, or both. Thus, Varnum necessarily had notice of a proceeding that might directly and adversely affect its legally protected interests, i.e., notice that it could be sanctioned, and, in responding to plaintiff's motion for sanctions by brief and oral argument, it had an opportunity to be heard on the matter.

Finally, with respect to Varnum's contention that the trial court made no particular findings as to Varnum itself and sanctionable conduct, MCL 600.2591 imposes a sanction on counsel for asserting a frivolous defense, and all that need be found is that the defense was frivolous. There is no requirement that it be shown that counsel, as opposed to his or her client, is to blame for asserting the frivolous defense. Further, in the context of frivolous defenses, we fail to see how Sweezie himself could be faulted for waiving the defenses of corporation by estoppel and misnomer of a corporation or for not realizing that the record did not support those defenses; these were plainly Varnum's miscues. With respect to MCR 2.114, Varnum argues that the trial court failed to inquire whether reasonable inquiry was made by Varnum in preparing the answer on Sweezie's behalf, faulting Sweezie for any falsehoods. The trial court determined that upon reasonable inquiry, Varnum should have been able to ascertain the correct responses to the allegations in the complaint. With respect to the response to ¶ 22 of the

-15-

complaint, we certainly agree with the trial court. Sweezie's involvement in the BreakWater Point development by way of negotiating sales of condominium units and the prospect of reaping the benefit of any profits were such elementary matters in this case and so plainly revealed in discovery that they should have been easily discoverable through reasonable inquiry when Varnum was drafting the answer. The admissions that were made in the answer, such that Sweezie had in fact been involved in marketing condominium units, and the nature of the allegations, including that a nonexistent corporation was the seller, which seemingly could have been checked, should have enlightened counsel to more fully explore Sweezie's true participation in the development. Reversal is unwarranted.

Affirmed. Having fully prevailed on appeal, plaintiff is awarded taxable costs under MCR 7.219.

/s/ Joel P. Hoekstra
/s/ William B. Murphy
/s/ Jane E. Markey